**In the Matter of the Condemnation of Certain Land by Norm LULOFF.**

**Norm LULOFF, Appellant,**

v.

**GARY LICHTY, Nancy Lichty, Brad Lichty, and Karen Lichty, Appellees.**

**No. 96–847.**

Supreme Court of Iowa.

Sept. 17, 1997.

Christopher L. Bruns of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellant.

John J. Hines of Dutton, Braun, Staack, Hellman & Iversen, P.L.C., Waterloo, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and TERNUS, JJ.

TERNUS, Justice.

This is the second appeal concerning appellant Norm Luloff's attempt to condemn privately-owned land for a public road to his landlocked property. *See* Iowa Code

§ 471.4(2) (1989).[1] In the prior appeal, we affirmed the district court's order that the condemnation could proceed, but imposed a condition on remand that a deficiency in the proposed route be corrected. *In re Luloff,* 512 N.W.2d 267, 269 (Iowa 1994) [hereinafter *Luloff I* ]. Thereafter, upon expiration of the time for correction of this deficiency, the district court found Luloff had failed to comply with the required condition and permanently enjoined the condemnation. Luloff appealed; the condemnees cross-appealed from the district court's failure to award attorney fees. We affirm.

## I. *Luloff I.*

Luloff owns a landlocked parcel of land located south of property owned by the appellees, Gary Lichty, Nancy Lichty, Brad Lichty and Karen Lichty. He wants to condemn a portion of the Lichtys' land for use as a public road and in that way gain access to his own property. In *Luloff I,* the district court denied injunctive relief to Nancy Lichty, who owned the adjacent property at that time, and permitted Luloff's eminent domain action to proceed. *Id.* We affirmed on appeal, but expressed our concern that the proposed route, known as the "cemetery route," would not actually provide access to Luloff's land.[2] *Id.* at 274 (noting a condemnation action under section 471.4(2) "should not be allowed to proceed [if it] does not by itself serve to provide the necessary access to the landlocked property").

The original eminent domain application laid out a route extending from the northwest *corner* of Luloff's parcel north across Nancy Lichty's land to Jubilee Road. *Id.* at 269. The fact that the route terminated at the corner of Luloff's property resulted in "a physical impossibility of Luloff gaining access to his property without first crossing" adjacent property not included in the route to be condemned. *Id.* at 274. Therefore, we conditioned Luloff's right to proceed with the condemnation upon a showing on remand that the eminent domain action would provide Luloff with access to his property. *Id.* at 275.

We suggested Luloff's showing could be made in one of two ways:

> Luloff [could] provide evidence of a permanent easement of record across one or more of the abutting properties sufficient to provide access to his lands in conjunction with the route proposed to be condemned; or ... Luloff [could] amend or refile his application for condemnation to include a portion of one or both of the abutting properties sufficient to provide access to his property.

*Id.* Luloff was required to demonstrate compliance with these conditions within 100 days of issuance of procedendo, or within any extended period granted by the court for good cause. *Id.* We warned that his failure to comply "shall be grounds for the district court to enjoin further proceedings on Luloff's eminent domain application." *Id.*

## II. *Proceedings on Remand.*

On remand, Luloff chose to refile his application for condemnation. The second application added new defendants to reflect changes in ownership of the involved properties. In addition, the proposed condemnation route was wider, its location was slightly changed, and it was extended in length and direction. The following figure reflects the new ownership of the properties and the altered route:

---

**1.** Chapter 471 has been renumbered and is now chapter 6A. *See* Iowa Code ch. 6A (1997).

**2.** A map showing the original route is contained in our prior opinion. *Luloff I,* 512 N.W.2d at 270.

The change of most significance to the present appeal is Luloff's attempt to condemn a 332 foot strip of roadway on Brad and Karen Lichty's land. This strip of land is shown on the map as parcel E. Condemnation of parcel E was apparently incorporated to satisfy the condition on remand that the "application for condemnation ... include a portion of one or both of the abutting properties sufficient to provide access to [Luloff's] property." *See id.* at 275.

Upon Luloff's filing of his new application, the Lichtys filed an application for injunction and dismissal of Luloff's condemnation action. After an evidentiary hearing, the trial court found no problem with Luloff's refiled application with one exception. That exception involved parcel E. The court made a finding of fact that

[t]his portion of the roadway could easily have been placed on Luloff's property, rather than Lichtys'. No credible evidence was provided to the Court as to why the roadway was placed running to the east on Lichtys' property rather than Luloff's property. No legitimate reason for

its placement on Lichty property appears to the Court. The only plausible explanations are harassment and/or self-interest. Placing the east roadway on Lichty property preserves Luloff's property.

In addition, the court found that approximately two weeks prior to trial, Luloff had sold Lot 1 to Paul Keister, another developer. Although Luloff retained Lot 2, he did not reserve an easement through Lot 1 to allow him access to Lot 2.

The trial court concluded the proposed condemnation route running north and south complied with the statutory requirements. But the court concluded the east-west section of the proposed roadway was an unnecessary taking. The court observed the north-south roadway could have proceeded directly south to Luloff's land and then headed east across Lots 1 and 2. Moreover, the court noted, Luloff had voluntarily and intentionally sold Lot 1 without reserving to himself an easement.

Based on the trial court's ruling that the proposed condemnation of parcel E was an

unnecessary taking, the court granted the Lichtys' application for injunctive relief. Luloff requested that the court limit the injunction to parcel E and give him some time to obtain an easement through Lot 1. The trial court refused, finding Luloff had "placed himself in his current predicament." Luloff was permanently enjoined from commencing or continuing any condemnation proceedings against the Lichtys to obtain access to his adjoining property. The court did, however, order the Lichtys to offer Luloff "the pasture easement" they had previously offered to Luloff's predecessors in title. *See Luloff I*, 512 N.W.2d at 270 (showing pasture route).

On appeal, Luloff contends he met all conditions of *Luloff I*. He asserts the trial court had no authority to consider the Lichtys' application for injunctive relief, but was limited on remand to ensuring his compliance with the condition imposed by the court. He also asserts the court "granted relief to individuals who were not proper parties," referring to Gary, Brad and Karen Lichty. Luloff claims that even if the court had the power to consider the request for injunctive relief, any injunction should have been limited to parcel E, and should not have precluded condemnation of the entire cemetery route. He argues the pasture-route easement is too vague and does not permanently resolve this matter.

The Lichtys cross-appeal from the trial court's failure to award attorney fees. They allege Luloff acted in bad faith, vexatiously and for an oppressive reason, and therefore, they are entitled to recover their attorney fees and expenses.

### III. Scope of Review.

■ A request for injunctive relief invokes the court's equitable jurisdiction. Iowa R. Civ. P. 320. Therefore, our review is de novo. Iowa R.App. P. 4. "We give weight to the district court's findings of fact, especially when considering the credibility of witnesses, but are not bound by them." *Matlock v. Weets*, 531 N.W.2d 118, 121 (Iowa 1995); *see* Iowa R.App. P. 14(f)(7).

### IV.. Authority on Remand.

■ Iowa follows the general rule that when a case is remanded for a special purpose the court on remand has no power other than that necessary to do the special thing authorized by the appellate court. *Winneba-*

*go Indus. v. Smith*, 548 N.W.2d 582, 584 (Iowa 1996); *Kuhlmann v. Persinger*, 261 Iowa 461, 468, 154 N.W.2d 860, 864 (1967). Luloff claims the trial court went beyond the mandates of our remand in *Luloff I* by considering whether the route proposed in his refiled application complied with statutory and constitutional constraints. He asserts the trial court's power was limited to determining whether the revised route provided access to Luloff's land. Because no one disagrees that the new route did provide such access, Luloff contends the trial court was without authority to issue an injunction.

We think Luloff misunderstands the scope of our remand. The trial court's role on remand of *Luloff I* was not limited to ensuring literal compliance with the condition we imposed on Luloff as a prerequisite to his going forward with the condemnation. It was clearly anticipated that Luloff's condemnation action would proceed upon remand—an injunction had been denied—and that the trial court would have the power to consider further proceedings in that action. This power necessarily included the authority to consider whether any changes made to Luloff's application on remand met statutory and constitutional requirements. It would be unreasonable to conclude that our prior opinion gave Luloff the unbridled discretion to condemn *any* access route regardless of whether that route complied with chapter 471 and the Iowa Constitution.

■ Luloff also contends the court exceeded its authority on remand in granting injunctive relief to Gary, Brad and Karen Lichty, who were not parties to the original condemnation action. These individuals were added as defendants by Luloff on remand because they had acquired a portion of the property Luloff sought to condemn. Under these circumstances, we find no merit in Luloff's contention that they were not proper parties. ·

### V. Scope of Injunctive Relief.

■ In attacking the injunctive relief granted by the court, Luloff confines his complaint to the scope of the injunction. He does not claim any error in the court's finding that condemnation of parcel E was an unnecessary taking; he simply asserts the injunction should not have extended to the "cemetery route." Upon our de novo review of the record, we agree with the trial court's

decision to enjoin Luloff from proceeding with the present condemnation in its entirety. A brief review of the applicable legal principles and the history of these proceedings supports our decision.

A landowner whose property is the subject of a condemnation action may permanently enjoin the eminent domain proceeding upon proof of two items. First, there must be "fraud, oppression, illegality or abuse of power or discretion by the condemnor." *Mann v. City of Marshalltown*, 265 N.W.2d 307, 313 (Iowa 1978); *accord Luloff I*, 512 N.W.2d at 274 ("[I]f an individual attempts to abuse the statutory provision [section 471.4(2)], the courts can intervene to halt such abuse."); *Halweg v. City of Sioux City*, 189 N.W.2d 623, 624 (Iowa 1971) (holding injunctive relief may be granted upon an "equitable ground such as fraud, illegality or want of power"); *Gardner v. City of Charles City*, 259 Iowa 506, 512, 144 N.W.2d 915, 919 (1966) (noting general rule that injunction of condemnation proceeding may be had upon a showing of fraud, abuse of discretion, or illegal deprivation of rights in violation of constitutional or statutory provisions governing the power of eminent domain). Second, the landowner must prove irreparable injury and the inadequacy of any legal remedy. *Matlock*, 531 N.W.2d at 122; *Incorporated City of Denison v. Clabaugh*, 306 N.W.2d 748, 755 (Iowa 1981). A permanent injunction is an extraordinary remedy. *Clabaugh*, 306 N.W.2d at 755. Therefore, "the court should carefully weigh the relative hardship which would be suffered by the enjoined party upon awarding injunctive relief." *Matlock*, 531 N.W.2d at 122.

As noted above, Luloff does not contest the district court's finding that parcel E was not necessary for Luloff to obtain access to his land. *See* 3 *Nichols on Eminent Domain* § 9.03, at 9–10, 9–13 to 9–14, 9–41 (rev.3d ed.1997) (stating condemnor may only take property that is "reasonably necessary"); *cf. Mann*, 265 N.W.2d at 313 (stating "[t]here can be no doubt there must be a necessity for the taking," in reference to condemnation by city). He also concedes a permanent injunction against the condemnation of parcel E is proper. Consequently, we confine our consideration of the appropriateness of injunctive relief to the cemetery route.

A. *Showing of fraud, oppression, abuse of power, illegality or violation of statutory or constitutional provisions.* We concluded in our prior opinion that the cemetery route fails to provide access to Luloff's land because it terminates "on a line parallel to the north boundary of Luloff's property." *Luloff I*, 512 N.W.2d at 274. We also held that a condemnation action is inadequate under section 471.4(2) if the proposed route does not by itself provide the necessary access to the landlocked property. *Id.* Thus, condemnation of the cemetery route under the refiled application violates the statutory provisions governing eminent domain.

We think the Lichtys have also shown Luloff has abused the power of condemnation and used it for an oppressive purpose. After *Luloff I* had been remanded to the district court, Luloff wrote a series of letters, against his attorney's advice, to the Lichtys' lawyer. These letters reveal Luloff wanted the Lichtys to buy his five-acre parcel for $30,000, even though Luloff had bought it for only $500. He asserts in one letter, "I'm a long ways from broke" and "Gary [Lichty] is dreaming if he thinks I don't have the money or the will to pursue this matter for a lifetime." In a later letter to the Lichtys' attorney, he warns the attorney that Gary is running out of money. He continues, "The land price offer keeps going higher over $30,000 as my expenses mount. Gary is whipped and not man enough to admit it. . . . I enjoy winning all the cases for the law records."

These letters also evidence Luloffs' excessive and unjust use of the pending condemnation to harass Gary Lichty. In one letter, Luloff states he is designing an arched iron sign bearing the name of the new road to be mounted over the condemned roadway. He asks Gary to choose between "Luloff's Lane" or "Luloff's Parkway" as the name for the new road through the Lichtys' property. In another letter, Luloff states, "I checked *my* cemetery road to see whether Gary had brought it up to *my* maintenance standards." (Emphasis added.) He then complains about Gary's mowing of the property adjoining the proposed road. In Luloff's final letter, he again states that Gary will have to follow "higher standards set by me" concerning Gary's usage and maintenance of "my cemetery road." He ends this letter with the announcement that "[u]pon winning the con-

demnation action we are planning a public parade and picnic with news coverage. Gary and family will be invited to explain how it is best to conform to the law."

In summary, on our de novo review we find that Luloff's proposed road does not comply with Iowa's eminent domain statute. That is because the cemetery route without the east-west segment, as to which Luloff concedes the injunction is proper, does not provide access to the landlocked parcel. Perhaps even more importantly, we also find Luloff has used the condemnation proceedings to harass the Lichtys and to extort an exorbitant price from them to purchase his property so as to avoid further litigation.

■ B. *Irreparable injury and inadequate legal remedy.* The need to engage in a multiplicity of lawsuits to obtain relief is generally viewed as an irreparable injury without an adequate legal remedy. *E.g., Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.,* 510 N.W.2d 153, 158 (Iowa 1993); *Planned Parenthood of Mid-Iowa v. Maki,* 478 N.W.2d 637, 640 (Iowa 1991); *accord* 42 Am.Jur.2d *Injunctions* § 50, at 791 (1969). Nevertheless, a court should not intervene to prevent multiple suits brought by the same plaintiff unless it is clearly necessary to protect against continued vexatious or oppressive litigation. *Miller v. Ellis,* 232 Iowa 558, 561, 5 N.W.2d 828, 830 (1942); 42 Am.Jur.2d *Injunctions* §§ 205, 206, at 986–87. Injunctions on this basis rest "on the fact that the litigation is for the purpose of harassing, annoying, and vexing an opponent, and that the jurisdiction of the court is invoked by the numerous proceedings, not for the attainment of justice, but rather to further or satisfy individual malice toward another." 42 Am.Jur.2d *Injunctions* § 206, at 988. Our finding that Luloff used the condemnation proceedings for oppressive and vexatious purposes places this case within the rule allowing injunctive relief.

C. *Balancing the equities.* We recognize that a grant of injunctive relief will result in some hardship to Luloff. As Luloff argues, the pasture route that will now provide access to his property is not as desirable or convenient as the cemetery route.[3] Notwithstanding this hardship, we think the equities of this case support an injunction.

First, Luloff has had ample opportunity to file an adequate condemnation action. The entire focus of our conditional affirmance of the district court's denial of injunctive relief in *Luloff I* was the failure of Luloff's proposed route to provide him with access to his property. We remanded the case so he would have a second chance to remedy this deficiency, but he did not do so.

That brings us to the second reason the equities of this case do not favor Luloff's position. Luloff did not make a slight or inadvertent error in the refiled application. He purposely chose to condemn land he did not need solely to harass the Lichtys and to preserve his own property while transferring to the Lichtys the burden of providing land for a public roadway. As the district court noted, there was no legitimate reason that the cemetery route could not have been extended directly south and enter Luloff's property on the west rather than from the north.

The final reason injunctive relief is equitable here is that Luloff had fair warning that he may not have another chance to condemn this roadway if he did not comply with the condition imposed on remand. We cautioned in *Luloff I* that "[f]ailure to comply with the conditions ... *shall* be grounds for the district court to enjoin further proceedings on Luloff's eminent domain application." *Luloff I,* 512 N.W.2d at 275 (emphasis added); *cf. Hockenberg Equip. Co.,* 510 N.W.2d at 158 (affirming permanent injunction where defendant had notice that breach of settlement agreement would entitle plaintiff to injunctive relief).

---

3. Because Luloff does not ask us to reverse that part of the court's order requiring the Lichtys to offer the pasture easement and because the Lichtys did not cross-appeal on this issue, we do not consider it in our de novo review. *See Hyler v. Garner,* 548 N.W.2d 864, 870 (Iowa 1996) ("The appeal of an equity case does not entitle an appellant to a *trial* de novo, only *review* of identi-fied error de novo."). We recognize, however, that the pasture route ends at Lot 1, now owned by Keister. Consequently, even the pasture route will not actually provide Luloff with access to the property he still owns. As the trial court noted, this predicament is. of Luloff's own making due to his sale of Lot 1 two weeks before trial. It appears Luloff transferred Lot 1 without retain-

This action has been pending since 1989 and has been used by Luloff to harass and annoy the Lichtys. Without a permanent injunction, this litigation may continue for several more years with the same consequences, as we have no assurance from Luloff that his next application will satisfy the requirements of our condemnation law any more than did his previous two applications. Under these circumstances, we conclude further pursuit of this condemnation will result in irreparable injury to the Lichtys and that they have no adequate remedy at law. Therefore, we affirm the district court's decree granting a permanent injunction to the Lichtys.

### VI. *Attorney Fees.*

■ On their cross-appeal, the Lichtys seek an award of attorney fees. They have failed, however, to "state how the issue was preserved for review." *See* Iowa R.App. P. 14(b). Moreover, we find no record of the trial court having ruled on their attorney-fee request. We will not consider it for the first time on appeal. *Peters v. Burlington N. R.R.*, 492 N.W.2d 399, 401–02 (Iowa 1992).

**AFFIRMED ON APPEAL AND ON CROSS–APPEAL.**

ing an easement in an unsuccessful attempt to retroactively make condemnation of parcel E

necessary.