**James COMES, Appellee,**

v.

**CITY OF ATLANTIC, Iowa, Appellant.**

**No. 98–389.**

Supreme Court of Iowa.

Oct. 13, 1999.

James Van Ginkel of Van Ginkel & Van Ginkel Law Office, Atlantic, and Ronald W. Feilmeyer of Cambridge, Feilmeyer, Landsness, Chase & Jones, P.L.C., Atlantic, for appellant.

Deborah L. Petersen of Reilly, Petersen & Hannan, P.L.C., Council Bluffs, for appellee.

Considered by McGiverin, C.J., and LARSON, NEUMAN, SNELL, and TERNUS, JJ.

TERNUS, Justice.

The plaintiff, James Comes, owns property that adjoins the City of Atlantic's airport. Concerned that the City would prematurely condemn a portion of his land for a proposed expansion of the airport, he instituted this action seeking an injunction against the City's condemnation of his property until the City had obtained all the approvals, permits, and funding required for the project. After trial, the district court entered a permanent injunction

against the City that could be dissolved only upon proof that the necessary funding had been approved by the Federal Aviation Administration. Upon the City's appeal, we reverse and remand for entry of an order dismissing the plaintiff's petition.

### I. *Background Facts and Proceedings.*

The City of Atlantic, believing that its current airport was inadequate for its needs, developed a comprehensive master plan for alternative ways in which the airport could be expanded. The process of implementing this plan is long term and will be done in stages. Now that a plan has been developed, the next step will be acquisition of the necessary property and rerouting of a road that would otherwise interfere with extension of a runway. As the project continues to develop, more extensive engineering studies will be done and various authorizations and permits will be obtained. Eventually, the runway will be extended and other improvements will be made to the airport.

The City's ability to complete any type of airport expansion is dependent upon federal funding, which generally accounts for ninety percent of the cost of this type of project. The City has filed an application with the Federal Aviation Administration (FAA) seeking funding for the first stage of its project. Generally, federal funding is approved piecemeal, although it is unlikely that once the FAA approves funding for one stage that it will refuse funding to complete the project. At the time of trial, the City had not yet been notified of the FAA's decision. The FAA had, however, reviewed the City's environmental assessment of its plans, which is required for federal funding, and had issued a finding of no significant impact.

James Comes is a farmer whose property adjoins the existing airport. He became concerned that the City would condemn his property and relocate the road, all to his great inconvenience, and then for some reason fail to complete the project. Based on this concern, Comes instituted

the present action, asking that the City be permanently enjoined from taking any further action to condemn his property.

The matter was tried to the court and resulted in the entry of a permanent injunction as described above. Although the trial court found that there was "a high probability" that the City would succeed "in every step along the way to complete this project," it held that "the City should not undertake condemnation of Plaintiff's land until [the required] funds are appropriated by the Federal Aviation [Administration]." The City appeals.

Our review is de novo. *See In re Luloff*, 569 N.W.2d 118, 122 (Iowa 1997). Although we give weight to the findings of fact made by the trial court, especially with respect to the credibility of witnesses, we are not bound by the trial court's findings. *See id.*

### II. *Analytical Framework.*

This case poses the City's ability to invoke its powers of eminent domain against a landowner's right to obtain injunctive relief. We initially consider the legal principles governing these competing interests.

A. *Eminent domain.* The power of a governmental entity to take private property for a public use without the owner's consent is generally referred to as the power of eminent domain. *See* 26 Am. Jur.2d *Eminent Domain* § 2, at 444 (1996). This power has been granted to cities in Iowa Code section 6A.4(6) (1997), which gives cities the right to take private property "for public purposes which are reasonable and necessary as incident to the powers and duties conferred upon cities." *See also* Iowa Const. art. I, § 18 (prohibiting the taking of private property for public use without first paying just compensation). Thus, Iowa law imposes two requirements before a city may invoke its powers of eminent domain: (1) the property must be taken for a public use; and (2) the taking must be reasonable and necessary. *See Vittetoe v. Iowa S. Utils.*

*Co.,* 255 Iowa 805, 809–10, 123 N.W.2d 878, 880–81 (1963).

**B.** *Enjoining condemnations.* Under certain circumstances, a property owner whose land is subject to eminent domain proceedings may obtain a permanent injunction halting the condemnation. *See Luloff,* 569 N.W.2d at 123. First, the landowner must show "'fraud, abuse of discretion, or other gross impropriety'" or that "'the owner is in some way illegally deprived of his rights in violation of the constitutional or statutory provisions governing the exercise of the power of eminent domain.'" *Mann v. City of Marshalltown,* 265 N.W.2d 307, 314 (Iowa 1978) (quoting 30 C.J.S. *Eminent Domain* § 401, at 491 (1965)); *accord Luloff,* 569 N.W.2d at 123. Claims that a municipality's action "is unwise, extravagant or a mistake of judgment" will not support injunctive relief. *Douglass v. Iowa City,* 218 N.W.2d 908, 913 (Iowa 1974). In addition to a showing of fraud, oppression, illegality or abuse of power, the person seeking to enjoin a condemnation must demonstrate "irreparable injury and the inadequacy of any legal remedy." *Luloff,* 569 N.W.2d at 123.

Because we conclude that the plaintiff has not proved the first element of his claim, the remainder of our discussion will focus on the requirement that the plaintiff prove fraud, oppression, illegality or abuse of power.

**C.** *Illegality.* The plaintiff's challenge to the City's proposed condemnation of his land is based on his allegation that there is "sufficient doubt and substantial uncertainty" that the airport expansion will become a reality because the City has not obtained the necessary authorizations, permits and funding. The plaintiff alleges, therefore, that until the required authorizations, permits and funding are in place, the City cannot validly assert that his land is being taken for a public purpose. In essence, the plaintiff is claiming that any eminent domain proceeding against his land at this time would violate section 6A.4(6) and would be illegal. Having identified the precise nature of the plaintiff's claim, we now turn to an examination of what proof is required for him to succeed in his claim of illegality.

In *Mann,* a case also involving the condemnation of land for an airport expansion, the landowner made a claim remarkably similar to that being asserted here. The landowner in *Mann* claimed the proposed condemnation of his property was not for a valid public purpose or use because there were too many uncertainties and contingencies with respect to the city's planned project. 265 N.W.2d at 314. Our court held that the district court had erred in dismissing the landowner's petition. *Id.* at 315–16. Viewing the landowner's challenge as directed to the legality of the city's actions, we concluded that the landowner had stated a permissible claim for injunctive relief. *Id.* at 313. To guide the district court on remand, we stated that the landowner, in order to obtain an injunction, would be required to prove the city "cannot reasonably expect to achieve its public purpose." *Id.* at 315. We quoted with approval the following statement of the Wisconsin Supreme Court:

"The owners [contend] that a public use can only exist in this state when there are no contingencies that may prevent some or all of the land being sought from being put to public use.... The owners ... argue that 'we must look at the question is it "conceivable," "possible"' that their lands might not be used.

We are of the opinion that the test advocated by the owners is too extreme to be sustained. There will always be some possibility that a planned improvement will not be completed and put to the use intended. The test cannot be whether it is possible, whether it is conceivable that the project would fail. The test must be whether there is a reasonable assurance that the intended use will come to pass. If there is reasonable probability that the [governmental enti-

ty] will comply with all applicable standards, will meet all requirements for the issuance of necessary permits, and will not otherwise fail or be unable to prosecute its undertaking to completion, there is a right of condemnation."

*Id.* (quoting *Falkner v. Northern States Power Co.*, 75 Wis.2d 116, 248 N.W.2d 885, 893 (1977)).

Based on these authorities, the test to be applied to the facts before us in this case is not whether there are uncertainties to be resolved in the City's project or whether it is possible that the planned expansion will not be completed. Rather, we must focus on whether the plaintiff has proved that the City "cannot reasonably expect" to use the plaintiff's property for an airport expansion. That issue, in turn, depends on whether the City can reasonably expect to complete the airport expansion project. We now examine the plaintiff's specific claims as to why that project may not be completed.

III. *Application of Test to Facts Presented Here.*

■ A. *DNR permit.* First, Comes claims that the Iowa Department of Natural Resources (DNR) may not issue a necessary permit for the City's project. It is undisputed that the proposed runway extension encroaches upon a floodplain and that a permit from the DNR will be required. The evidence at trial showed that the City's consultants had been working with the DNR on this issue and that the DNR had suggested a "minor" change to the runway that would move it outside the floodway. A DNR employee testified at trial that if this change were made, then the agency would probably issue a permit for the project. The plaintiff introduced no evidence that the proposed change could not or would not be made. Therefore, we conclude that the plaintiff has failed to prove that the City cannot reasonably expect to obtain the required DNR permit for the airport expansion.

B. *DOT approval.* The plaintiff also relies on the expectation that the City will have to obtain approval of the Department of Transportation (DOT) to relocate a road and connect the relocated road to a state highway. Although the City had not, at the time of trial, applied for a permit from the DOT, the City's consultants had presented the DOT with two proposed layouts for the intersection between the new road and the highway. The DOT did not like some features of the proposed intersection, and so it had devised two alternatives for the City's consideration. At trial a planner for the DOT testified that he knew of no reason that the project could not be done "in one fashion or another." Again, we think the plaintiff has not proved that the City cannot reasonably expect to obtain the required permit from the DOT for the road relocation aspect of its airport project.

C. *Zoning changes.* The City will also be required to obtain a special use exception in order to comply with zoning regulations. The only testimony on this issue was elicited from the City's administrator, who testified that he knew of no reason that the board of adjustment would not grant the City a conditional use permit for the airport expansion. He based his testimony on two factors: (1) the conditional use was already existing, and the permit would simply authorize an expansion of that use; and (2) his review of the criteria for a permit led him to conclude that the City would easily satisfy those criteria. We find that the plaintiff has not proved that the City cannot reasonably expect to obtain a conditional use permit for its project. *See Hardy v. Grant Township Trustees*, 357 N.W.2d 623, 627 (Iowa 1984) (holding that plaintiffs had not met *Mann* test because they had failed to prove that the condemning authority "would be denied permission to use the [condemned] tract for a township hall if they were to seek a variance or apply for an amendment to the [zoning] ordinance").

D. *Historical artifacts.* Another contingency that the plaintiff has identified is the existence of historical artifacts on the airport expansion site. The evidence introduced at trial showed that further investigation must be undertaken to identify the nature and extent of the artifacts. No witness testified that the finding of historical artifacts would prevent the project from going forward. To the contrary, the City's consultant and the city administrator testified that such artifacts are typical and usually are not a serious problem. This evidence will not support a finding that the City cannot reasonably expect to complete expansion of the airport.

E. *Funding.* The final issue raised by the plaintiff is the question of federal funding. Based on the testimony at trial, it is probable that all of the permits required for federal funding will be obtained. In addition, one of the City's consultants testified without contradiction that the FAA's finding of no significant environmental impact is a signal to the City that it may proceed with the project. This finding indicates that the FAA believes, based on its initial assessment, that the project generally conforms to its requirements.

The greatest uncertainty revealed by the record with respect to federal funding is whether funds will be available. Testimony from an FAA supervisor established that each year the requests for airport improvement funds exceed the monies available. Therefore, the FAA has established a priority system, giving a higher priority to rehabilitation and improvement of existing airports than to construction of new airports. Other than an uncertainty about the level of available funds, the plaintiff showed no other potential obstacle to the City's ability to obtain federal funding.

We think the fact that requests for funding exceed available funds establishes at most a *possibility* that the project will not be funded. The excess of requests over funds does not provide a basis to conclude that the City cannot reasonably expect to complete its airport project, especially in view of the fact that the City's project falls within a high-priority funding category. Similarly, the *possibility* that the FAA would fund the first stage of the project, but not the remaining stages, will also not support a conclusion that the City cannot reasonably expect to accomplish its ultimate objective, since the testimony established that, once a portion of a project was funded, it was unlikely that the FAA would not provide funding to complete the project.

IV. *Summary and Disposition.*

In summary, we find that there is no likely obstacle to the City's completion of the contemplated airport expansion. Although contingencies and uncertainties admittedly exist, they do not rise to a level that the City cannot reasonably expect ultimately to be successful. Therefore, the trial court erred in granting injunctive relief. We reverse the district court's order and judgment and remand for entry of an order dismissing the plaintiff's petition.

**REVERSED AND REMANDED.**