# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3778

_____

Robert Milligan,

        Appellant,

v.

City of Red Oak, Iowa,

        Appellee.

*
*
*
*
*  Appeal from the United States
*  District Court for the
*  Southern District of Iowa
*
*  [PUBLISHED]
*

_____

Submitted:  May 11, 2000

Filed:  October 16, 2000

_____

Before BOWMAN, FLOYD R. GIBSON,[1] and LOKEN, Circuit Judges.

_____

PER CURIAM

Robert Milligan appeals the District Court's[2] dismissal of his complaint against the city of Red Oak, Iowa, in which Milligan alleged a taking of his property by the city

_____

[1]Complications from an automobile accident have prevented Judge Gibson from reviewing this opinion prior to its being filed.  The opinion is consistent with Judge Gibson's vote at conference.

[2]The Honorable Ross A. Walters, Chief United States Magistrate Judge for the Southern District of Iowa, presiding with the consent of the parties pursuant to 28 U.S.C. § 636(c).

in violation of the Public Use Clauses of the United States and Iowa Constitutions. Milligan sought to permanently enjoin the city from taking his property through condemnation proceedings, arguing that the proposed taking was not for a public purpose. The parties consented to proceed before a magistrate judge, who entered findings of fact, conclusions of law, and judgment dismissing Milligan's complaint. Milligan appeals, and we affirm.

## I.  BACKGROUND

Milligan owns a parcel of agricultural land in unincorporated Montgomery County, Iowa, adjacent to the Red Oak Municipal Airport. Milligan acquired his interest in this land in the mid-1980s from his parents who had owned the farm since the early 1960s. The city acquired easements over portions of Milligan's land in 1964 when the airport was initially developed. Although zoned for industrial use, the property had been used agriculturally both before and subsequent to its acquisition by his parents. Milligan currently uses a portion of his farm for hog production and the remainder for grain production.

In an expansion of his hog operation in the mid-1980's, Milligan added to his farm new buildings, a waste treatment facility, and an anaerobic hog manure lagoon. As part of this expansion, Milligan and the city negotiated a wastewater treatment contract. Shortly thereafter, the city determined that the strength of the waste discharged from the farm was in excess of that contemplated by the city in entering the agreement and in excess of the city wastewater treatment plant's capacity. Accordingly, the city refused to accept any additional animal waste from the farm. Milligan proposed to meet the farm's waste disposal needs through the construction of an additional, much larger anaerobic hog manure lagoon. He proposed to locate this lagoon on an area of his land contiguous with the airport, part of which extended into the space between two runways. Milligan sought and obtained approval from the Iowa

Department of Natural Resources (DNR) for the construction of this lagoon. The location of the lagoon was chosen based on DNR setback requirements.

After Milligan received the permit from DNR, but before substantial construction began, Montgomery County requested that Milligan obtain a special use permit. Milligan ceased further construction and filed suit in the Iowa district court for Montgomery County requesting a declaratory judgment that his use of his property was exempt from county zoning under Iowa Code § 335.2. The Iowa district court ruled that construction of the lagoon was an agricultural purpose exempt from county zoning ordinances, therefore requiring no special use permit.

While the declaratory judgment action was pending, the city filed a petition against Milligan in the Iowa district court for Montgomery County seeking temporary and permanent injunctions against construction of the lagoon. The city alleged interference with its easement and violation of city zoning ordinances concerning the airport hazard areas. Milligan answered that the easement obtained by the city in 1964 had been abandoned as a result of airport improvements in 1987. The city put forth two arguments in support of its claims. First, the easement, which was originally taken as a runway clear zone, continued to exist as an airport hazard area. Second, Milligan's proposed lagoon threatened airport safety because it would attract birds and waterfowl to the area of the runways and it would obstruct pilots' view of the other runway. Following a trial on this matter, the Iowa district court granted the injunction prohibiting construction of the lagoon because it would encroach on the city's valid easement. Additionally, the court found that the lagoon would not constitute a safety hazard because it would not attract birds or waterfowl.

Following the Iowa district court's second ruling, Milligan reconfigured his proposed lagoon and applied to DNR for a supplemental permit based on his revised plans for the lagoon. While that application was pending and unknown to Milligan, the Red Oak City Council passed a resolution authorizing the city to purchase or condemn

-3-

an easement over approximately 30 additional acres of Milligan's land as airport hazard areas. The area to be purchased or condemned included the entire area where the proposed lagoon was to be located. The DNR subsequently issued the supplemental permit authorizing construction of the revised lagoon, after being fully advised by both Milligan and opponents of the lagoon.

Approximately five months later, the city sent Milligan a letter offering to purchase a negative easement that would restrict use of the 30 acres to row crop farming. The city stipulated that if Milligan did not accept this offer, the city would commence condemnation proceedings to obtain the easement.

Milligan filed this case against the city in the United States District Court for the Southern District of Iowa approximately two weeks after receiving the above-mentioned letter. He requested temporary and permanent injunctions prohibiting the condemnation, alleging that the proposed condemnation amounted to an unconstitutional taking of his property because it lacked a valid public purpose. Specifically, he argued that the city's stated purpose for acquiring the easement, to avoid the airport safety hazard that allegedly would result from bird and waterfowl attraction to the lagoon, was not a proper basis for a condemnation action. Milligan cited the Iowa district court's previous ruling that the lagoon would not constitute such a hazard, arguing that the city was precluded from relitigating the same issue. In the alternative, he argued that no public purpose would be served by the taking because the city could not reasonably expect to achieve its goal of improving airport safety by prohibiting construction on the proposed easement area. After a two-day bench trial, at which the District Court received evidence on and considered the issue of whether the lagoon would pose a threat to airport safety by attracting birds, the District Court issued findings of fact and conclusions of law resolving the issue in favor of the city, and entered judgment denying Milligan's requested relief and dismissing the complaint.

Milligan filed this appeal, raising two issues for reversal. First, he argues that the doctrine of issue preclusion estops the city from raising the issue of airport safety, based on the attraction of birds to Milligan's proposed lagoon, because in the prior proceeding a state court found no airport safety hazard. Second, he argues that the proposed condemnation of Milligan's property is not rationally related to the public purpose of promoting airport safety and that the city could not reasonably expect the taking to achieve that public purpose.

## II.    DISCUSSION

We review the District Court's findings of fact for clear error and its conclusions of law de novo. See Planned Parenthood of Greater Iowa, Inc. v. Atchison, 126 F.3d 1042, 1048 (8th Cir. 1997).

### A.    Public Purpose

The United States Constitution, Amendments 5 and 14, and the Iowa Constitution, Article I, Section 18, provide that the taking of private property by the government must be for a public purpose and that just compensation shall be paid to the owner. Iowa law grants cities the power to take private property, so long as the taking is for a public purpose and is reasonable and necessary. See Iowa Code § 6A.4(6) (1999); Comes v. City of Atlantic, 601 N.W.2d 93, 95 (Iowa 1999). Iowa law thus follows a two-step analysis, looking first at whether the purpose is for a public use, and then at the connection between the purpose and the means. Vittetoe v. Iowa S. Utils. Co., 123 N.W.2d 878 (Iowa 1963). The federal constitutional analysis of public use similarly requires two steps: whether the use is legitimate and public in nature, and whether the means are rational. See Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 242-43 (1984).

We conduct our analysis of whether the city's proposed purpose is public in nature in the same manner whether under Iowa or federal law.  The United States Supreme Court has "held that the public use requirement of the Takings Clause is coterminous with the regulatory power, and that the Court will not strike down a condemnation on the basis that it lacks a public use so long as the taking 'is rationally related to a *conceivable* public purpose.' "  National R.R. Passenger Corp. v. Boston & Me. Corp., 503 U.S. 407, 422 (1992) (emphasis added) (quoting Midkiff, 467 U.S. at 241).  It is within the legislative province to determine in the first instance whether a use is public in nature, which determination should not be disturbed by the courts "unless it is clear, plain and palpable it is private in character."  Vittetoe, 123 N.W.2d at 880.  Legislation calling for condemnation enjoys the same presumption in its favor as when the constitutionality of a statute is challenged.  See Abolt v. City of Fort Madison, 108 N.W.2d 263, 268 (Iowa 1961).  In this case, the city clearly has authority as well as a legitimate interest in regulating airport safety.  The Iowa legislature has declared airport hazards to be a public nuisance, and that activities to prevent or eliminate such hazards are necessary to accomplish the public purpose of public health, safety, and general welfare.  See Iowa Code § 329.2 (1999).[3]  The city's stated purpose

---

[3]This statute provides as follows.

It is hereby found that an airport hazard endangers the lives and property of users of the airport and of occupants of land and other persons in its vicinity, and also, if of the obstruction type, in effect reduces the size of the area available for the landing, taking off and maneuvering of aircraft, thus tending to destroy or impair the utility of the airport and the public investment therein.  Accordingly, it is hereby declared:
 1. That the creation or establishment of an airport hazard is a public nuisance and an injury to the community served by the airport in question.
 2. That it is necessary in the interest of the public health, safety, and general welfare that the creation or establishment of airport hazards be prevented.
 3. That this should be accomplished, to the extent legally possible, by

-6-

in acquiring a negative easement over Milligan's land, to avoid the creation of an airport safety hazard, is a public purpose and provides a basis for a condemnation action under both federal and Iowa law.

While federal constitutional analysis requires that condemnation of private property must be rationally related to the public purpose for which it is taken, Iowa law provides that such a taking must be "necessary" to accomplish the public purpose. See Iowa Code § 6A.4 (1999). The Iowa test for necessity is whether the condemning authority can reasonably expect to achieve its public purpose. See Mann v. City of Marshalltown, 265 N.W.2d 307, 315 (Iowa 1978). The plaintiff bears the burden to disprove this. See id. Federal constitutional analysis requires merely that the " '[l]egislature rationally could have believed' " that its act would carry out the public purpose. Midkiff, 467 U.S. at 242 (emphasis omitted) (quoting Western & S. Life Ins. Co. v. State Bd. of Equalization, 451 U.S. 648, 672 (1981)). The City Council's decision to acquire or condemn an easement limiting the use of the portion of Milligan's land adjacent to the airport to row crop farming in order to carry out the city's responsibility to provide for airport safety meets both the rational relationship and necessity tests.

In Milligan's brief, he mentions in passing that the city's stated public purpose is simply a pretext for achieving a private purpose. The District Court rejected this argument, finding that the standard for judging whether the City Council's purpose is

---

proper exercise of the police power.
4. That the prevention of the creation or establishment of airport hazards, and the elimination, removal, alteration, mitigation, or marking and lighting of existing airport hazards are public purposes for which municipalities may raise and expend public funds, as an incident to the operation of airports, to acquire land or property interests therein.

Iowa Code § 329.2 (1999).

public is an objective one. See Milligan v. City of Red Oak, No. 1-98-CV-10010, at 22 (S.D. Iowa Aug. 23, 1999) (Findings of Fact, Conclusions of Law and Order for Judgment). Were we to decide the issue, we are inclined to think we would agree with the District Court. But inasmuch as Milligan's brief does not support his assertion with any argument or legal authority, he has waived the issue and we do not address it. See Stephenson v. Davenport Community Sch. Dist., 110 F.3d 1303, 1306-07 n.3 (8th Cir. 1997).

**B.      Issue Preclusion**

Milligan argues that the District Court is precluded from retrying the factual issue of whether his proposed lagoon would attract birds and thus create an airport hazard because the Iowa district court, in a prior case between the same parties, tried this issue and found that the lagoon posed no threat to airport safety. We disagree.

Issue preclusion prevents a party to a prior action from relitigating issues that were raised and resolved in the previous action. See, e.g., Hunter v. City of Des Moines, 300 N.W.2d 121, 123 (Iowa 1981). State legislative acts and judicial decisions "have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738 (1994); accord Haberer v. Woodbury County, 188 F.3d 957, 961 (8th Cir. 1999). Iowa law requires that four conditions be met before an Iowa court may apply the doctrine of issue preclusion:  " '(1) the issue determined in the prior action is identical to the present issue; (2) the issue was raised and litigated in the prior action; (3) the issue was material and relevant to the disposition in the prior action; and (4) the determination made of the issue in the prior action was necessary and essential to that resulting judgment.' " Dettmann v. Kruckenberg, 613 N.W.2d 238, 244 (Iowa 2000) (quoting American Family Mut. Ins. Co. v. Allied Mut. Ins. Co., 562 N.W.2d 159, 163- 64 (Iowa 1997)); accord North Star Steel Co. v. MidAmerican Energy

Holdings Co., 184 F.3d 732, 737 (8th Cir. 1999). Failure of any of these four conditions prevents the application of issue preclusion.

The issues of whether birds would be attracted to Milligan's proposed lagoon, and whether this would constitute an airport hazard, were raised and resolved in the state court. These same issues were raised in the District Court. The dispositive issues, however, in the two proceedings were not identical because different lagoon configurations were presented to the state and federal courts and because the state court found not a water fowl hazard but a pilot visibility hazard. On the basis of that finding, the state court granted the city's motion for an injunction prohibiting Milligan from constructing his lagoon as it was then planned. Therefore, inasmuch as the issues in the two judicial proceedings were not identical, the doctrine of issue preclusion is inapplicable.

More to the point, however, the District Court in any event was not reviewing the state judicial decision. Instead, its review was of a subsequent finding of the Red Oak City Council, a legislative body, that the lagoon would create a water fowl hazard to aviation. We have been shown no authority, and are unaware of any, for the proposition that through collateral estoppel a finding made in a judicial decision can preclude a legislative body from later making a contrary finding. As stated earlier in this opinion, the city's action taken in the interest of airport safety meets both the federal rationally-related standard and the more stringent Iowa reasonably-expect-to-achieve standard, and therefore must be sustained.

III.   **CONCLUSION**

For the reasons stated, Milligan's arguments for reversal lack merit. Accordingly, the judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.