# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3213
_____

Tyrone J. Patterson

*Plaintiff - Appellant*

v.

City of Omaha, a political subdivision of the State of Nebraska; Molly Hiatt, both individually and officially as an officer of the Omaha Police Department; Paul Hasiak, both individually and officially as an officer of the Omaha Police Department

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: October 8, 2014
Filed: March 9, 2015

_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

_____

SMITH, Circuit Judge.

Tyrone Patterson appeals the district court's[1] denial of his motion for a new trial after a jury returned a verdict finding that Patterson was a victim of a police officer's use of excessive force, yet only awarded $1 in nominal damages. After issuing its verdict, the jury, on its own accord, issued jury statements to each of the parties. The statements gave the jury's reasoning for its verdict. Patterson moved to alter or amend the judgment or, in the alternative, for a new trial. The district court denied the motion and upheld the verdict. Patterson also appeals the district court's grant of summary judgment in a separate phase of the litigation. We affirm.

## I. *Background*

"We set forth the facts in the light most favorable to the jury's verdict." *Hous. 21, L.L.C. v. Atl. Home Builders Co.*, 289 F.3d 1050, 1051 (8th Cir. 2002). On April 13, 2009, Patterson's mother requested assistance from City of Omaha police after Patterson refused to leave following an argument. Officers Molly Hiatt and Paul Hasiak were dispatched to the house. Upon reaching the house, the officers briefly talked with Patterson's mother on the front lawn. She expressed that she wanted Patterson to leave but that he refused. Hiatt testified that Patterson's mother stood near "the edge of the patio on the grass" for the entire incident. The officers approached Patterson, who sat on a chair on the porch. The officers told him several times that he had to leave because the owner of the property wanted him to leave and that he had no legal right to remain. Patterson was calm at first, but became noticeably agitated when the officers suggested that Patterson could go to a homeless shelter.

Patterson refused several additional pleas to leave the property and became increasingly agitated. The officers then advised Patterson that he was under arrest and would have to be physically removed from the property. Hasiak moved behind Patterson into a position to handcuff him. Both Hiatt and Hasiak attempted to move

---

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

Patterson out of the chair by grabbing his arm and lifting him from under his armpits. Patterson began to resist.

Patterson and Hasiak began scuffling. While scuffling, the men lost their balance and fell to the ground; on the way down, both men fell against a barbeque grill "with considerable force." The scuffle continued on the ground. Hasiak then employed several immobilization techniques that he learned during police training. First, Hasiak punched Patterson in the stomach area with a closed fist to make his breathing more difficult. When this did not work, Hiatt attempted to use her taser to subdue Patterson. However, the taser probes did not connect properly. Hasiak then attempted another immobilization technique by thrusting his knee into Patterson's thigh. Patterson continued to resist. Hiatt again fired her taser, and again the taser probes did not connect properly. Hasiak then used a third technique, and attempted to deliver an angled kick to Patterson's leg between his knee and his buttocks. Hasiak missed his mark and contacted Patterson's torso.

Patterson stopped resisting almost immediately after Hasiak's kick. The officers rolled Patterson onto his stomach on the ground and handcuffed him. The officers proceeded to put Patterson in their police cruiser. Patterson began to complain of pain and the officers took him to the hospital.

At the hospital, medical staff conducted x-rays and a CAT scan. The medical staff diagnosed Hiatt as having five fractured ribs but believed that they would heal without further treatment. The hospital released Patterson into police custody. The next morning, Patterson pleaded guilty to a charge of failing to leave his mother's property and was eventually released for time served. Upon his release, he collapsed outside of the county jail building and was returned to the hospital. This time, doctors discovered that Patterson had suffered a torn intestine in addition to the five broken ribs. He underwent surgery for the intestinal tear and was released a week later.

In April 2011, Patterson sued Hiatt and Hasiak in their individual and official capacities under 42 U.S.C. § 1983 alleging that the officers' use of excessive force caused Patterson's injuries. Patterson also named the City of Omaha (the "City") as a defendant in the lawsuit alleging that its policies and practices facilitated the officers' improper actions. The matter proceeded to trial. On the first day of trial, the district court granted the officers' and the City's motion to bifurcate the issues into two separate trials. The court accepted the defendants' contention that trying the officers in their individual capacities with the City risked confusion and prejudice to the officers. As a result, the trial proceeded solely on issues related to the officers' liability in their individual capacities. The remaining issues—the officers' liability in their official capacities and the City's liability—would be decided in a subsequent proceeding.

During the trial, two doctors that treated Patterson's injuries testified. Dr. Daniel Steier, M.D., the doctor who evaluated Patterson when he was first transported to the hospital, testified that a blow to the abdomen most likely caused Patterson's injury. That being said, he could not opine with any degree of medical certainty whether one blow, or several blows, fractured Patterson's ribs. Dr. Michael Hovey, M.D., the surgeon who later repaired Patterson's intestine tear, testified that Patterson's injuries most likely occurred from a kick to the torso. Dr. Hovey also opined that Patterson's injuries were not caused by the fall on the barbeque grill because such an impact could not cause such trauma "[u]nless you're falling on something, you know, pointed and with—you know, with a high energy transfer right in one location."

At the trial's end, the jury returned a verdict finding that Hasiak had used excessive force but that Hiatt had not. Notwithstanding this finding, the jury awarded Patterson only $1.00 in nominal damages for his injuries and no punitive damages. Atypically, the jury issued statements to each of the parties involved. To Hasiak, the jury stated "it appears that some force was necessary, however we felt that it escalated too quickly and to a level that crossed a line of excess for the level of resistance. We

-4-

believe that more time could have been spent diffusing the situation to potentially avoid a physical altercation." The jury statement to Patterson said that "it was unfortunate that you sustained these injuries, however you were responsible for your own actions when you failed to comply with Officers' [sic] instructions."[2] The court entered judgment in accordance with the verdict on December 14, 2012.

Patterson moved to alter or amend the judgment or, in the alternative, for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. Patterson argued that the jury's finding that Hasiak used excessive force was inconsistent with its award of only nominal damages. The district court found no such inconsistency, stating

> [I]t is not inconsistent for the jury to have found that one or more acts constituted excessive force but that others constituted only reasonably necessary force. Nor is it inconsistent, given the conflicting testimony, for the jury to have found that the plaintiff failed to prove his injuries were a proximate cause of an act of excessive force.

The district court supported this reasoning by citing to this court's dicta in *Westcott v. Crinklaw*, 133 F.3d 658, 661 (8th Cir. 1998) (stating that "a jury may reasonably conclude that compensatory damages are inappropriate despite a finding that excessive force was used" if the jury finds that "both justifiable and unjustifiable force might have been used and the injury may have resulted from the use of justifiable force"). Consequently, the district court denied Patterson's motion and upheld the jury verdict. The court did not reference the jury statements in its decision. Patterson revived his arguments on April 8, 2013, in a motion to reconsider the denial of a new trial pursuant to Rule 60(b); the court denied the motion on April 10, 2013.

---

[2]Juries rarely issue explanatory or clarifying statements to parties. These particular statements probably resulted from an exchange with the court during the jury's deliberations. The jury submitted a question asking whether it could make "additional statements to the plaintiff and defendants." The district court responded "[y]es, you may."

Subsequently, the district court granted the officers' and the City's motion for summary judgment. As part of its review, the district court considered "official written policies pertaining to training on excessive force and internal review of incidents involving excessive force," as well as "affidavits from officials that are responsible for implementing the City's training and internal review procedures." The court found that the City's policies trained officers "in the acceptable use of force and that the internal review process had been successful in appropriately punishing officers who used excessive force or removing them from duty." In contrast, the court found that Patterson failed to adduce evidence that created a genuine material fact dispute for a jury to resolve at trial. As a result, the district court granted summary judgment in favor of the officers in their official capacities and in favor of the City.

## II. *Discussion*

Patterson appeals, challenging both the district court's denial of his request for a new trial based on the alleged inconsistency of the jury's verdict and the district court's grant of summary judgment.

### A. *Dismissal of Appeal*

As a threshold matter, we consider the officers' and the City's motion to dismiss Patterson's appeal of the jury verdict. They argue that Patterson's notice of appeal was not timely pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure. Generally, Rule 4(a) requires that a notice of appeal be filed within 30 days after entry of an appealable order or judgment. Subsection (4) of Rule 4, applicable to this case, states that the 30-day clock does not begin to run until the district court rules on certain post-trial motions. Those motions include a motion to alter or amend a judgment, a motion for a new trial, and a motion "for relief under Rule 60 [of the Federal Rules of Civil Procedure] if the motion is filed no later than 28 days after the judgment is entered." Fed. R. App. P. 4(a)(4)(A)(vi). The officers and the City argue that Patterson's 30-day clock began to run no later than April 10, 2013, after the district court dismissed Patterson's last challenge to the jury's verdict and the court's

-6-

denial of a new trial. Thus, Patterson's appeal of the jury's verdict and denial of a new trial would be untimely because the notice of appeal was filed on October 1, 2013, far outside the 30-day window.

Our jurisdiction is "generally limited to appeals taken from 'final decisions of the district courts.'" *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 791 (8th Cir. 2012) (quoting 28 U.S.C. § 1291). "A 'final decision' is ordinarily one which disposes of all the rights of all the parties to an action." *In re Licht & Semenoff*, 796 F.2d 564, 569 (1st Cir. 1986).

We decline to dismiss the appeal. The district court's bifurcation of issues into separate trial proceedings did *not* create two separate actions, but merely separated the action into two separate phases. The issue decided in the first phase—the officers' liability in their individual capacities—resolved a threshold matter for the second phase that examined the officers' liability in their official capacities and the *Monell* claims against the City. We addressed a similar circumstance in *Mille Lacs Band of Chippewa Indians v. State of Minnesota*, 48 F.3d 373 (8th Cir. 1995), in which we found that an appeal from Phase I orders was properly before the court at the end of Phase II because the Phase I orders were not final—that is, they resolved only threshold issues and remained reviewable following the conclusion of Phase II of the litigation. *Id.* at 375.

Accordingly, the judgment of the district court issued on December 14, 2012, was *not* a "final decision" and neither was the court's order on April 10, 2013. As a result, we find that the October 1, 2013 notice of appeal was timely filed after the court's final disposition of the motion for summary judgment. Pattertson's notice of appeal preserved all issues relating to the alleged inconsistency of the jury's verdict for this appeal.

## B. *Consistency Between the Finding that Excessive Force Was Used and an Award of Nominal Damages*

Turning to the merits of the appeal, "[w]e review a district court's denial of a motion for a new trial for abuse of discretion." *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 731 (8th Cir. 2006). "We will not reverse the district court's decision unless there is a clear showing that the outcome is against the great weight of the evidence so as to constitute a miscarriage of justice." *Blair v. Callahan*, 664 F.3d 1225, 1230 (8th Cir. 2012) (citations and quotations omitted). When assessing the findings of the jury, "[w]e view the evidence in the light most favorable to the jury verdict, assuming as true all facts which [the prevailing party]'s evidence tended to prove." *Mary Ellen Enters. v. Camex, Inc.*, 68 F.3d 1065, 1068 (8th Cir. 1995) (citation omitted).

We considered a finding of excessive force paired with an award of nominal damages in *Westcott*, in which a victim's wife brought a § 1983 action when police shot and killed her husband, Arden Westcott. *Westcott*, 133 F.3d at 659. In *Westcott*, the jury instructions required that the evidence establish a causal link between the force used and the injury suffered. Instruction No. 17 stated that if "[the police officer's] use of force in shooting Arden Westcott was, under the circumstances, excessive because the particular force was not reasonably necessary for the purpose of protecting [the officer] from serious physical injury," and if "Arden Westcott suffered damages as a direct result of [the officer's] action," then the jury should return a verdict for Westcott. *Id.* at 663. When the jury returned a verdict for Westcott, it necessarily found that the officer's action of shooting Westcott was excessive force and that Westcott's injury (his death) was directly linked to this use of excessive force. Thus, the court found that the jury's award of $1.00 in nominal damages for such a loss of life was "inadequate as a matter of law." *Id.*

Patterson's case, however, is distinguishable from *Westcott*. Here, Patterson did not establish the direct causal link showing that Hasiak's use of excessive force caused Patterson's injury. First, the jury did not make a finding on which of the three uses of

force—the punch, the knee, and the kick—were necessary and which were excessive. Second, Patterson did not, and could not show which application of force caused his injury. While the medical doctors opined that it was most likely that the angle kick caused Patterson's injuries, they could not say this with a medical certainty when compared with other alternative sources of trauma. When Dr. Steier was asked at trial whether a kick to the abdomen could disrupt internal organs, he answered "[y]es, it could." When asked if falling on a "level board" could cause the same type of injury, Dr. Steier responded "[t]hat's a hard question to answer" because "it all depends on the position of the board and how your body addresses the board as it's falling." Dr. Hovey was a bit more certain. When asked at trial whether he thought the blunt force of a punch or a knee strike to the abdomen could cause an intestine tear, he replied "I don't believe so." When asked about whether Patterson's falling on the barbeque pit could have caused the tear, he replied "Unless you're falling on something, you know, pointed and with—you know, with a high energy transfer right in one location, I don't think so." Finally, when asked if a kick could have caused the tear, he answered "[t]hat—of all the energy—or of all the mechanism of injury that would be the—seem to be the most likely."

When the evidence is viewed in the light most favorable to the jury's verdict, we agree with the district court that there is no inconsistency with the jury's award of nominal damages. In *Westcott*, we acknowledged situations where "a jury may reasonably conclude that compensatory damages are inappropriate despite a finding that excessive force was used," one of which occurs "when there is evidence that both justifiable and unjustifiable force might have been used and the injury may have resulted from the use of justifiable force." *Id.* at 661 (citing *Gibeau v. Nellis*, 18 F.3d 107, 110 (2d Cir. 1994) (upholding a jury's decision not to award compensatory damages because the plaintiff did not meet his burden of proving that his injuries were proximately caused by the use of excessive force)); *see also Haywood v. Koehler*, 78 F.3d 101, 104–05 (2d Cir. 1996) (upholding an award of nominal damages because the conflicting accounts of the use of force allowed a jury to find that the plaintiff's

injury arose from the use of justifiable force). Here, the jury could have concluded that both necessary and excessive force were used, but Patterson's severe injuries resulted from the application of necessary force.

Additionally, the post-trial jury statements to the parties can be interpreted as an effort to harmonize their finding of excessive force with the nominal-damage award. First, the jury's statement to Hasiak that "it appears that some force was necessary, however we felt that it escalated too quickly and to a level that crossed a line of excess" confirms that the jury found that both necessary and excessive force were used to subdue Patterson. Second, the jury's statement to Patterson that "it was unfortunate that you sustained these injuries, however you were responsible for your own actions when you failed to comply with Officers' [sic] instructions" can be interpreted to mean the jury believed Patterson's injuries resulted from some indistinguishable combination of necessary and excessive force because he failed to comply with the officers' orders.[3]

In light of the court's reliance on *Westcott* and our review of the jury statements,[4] we find no abuse of discretion because the clear weight of the evidence

---

[3]We reach this interpretation in our attempt to harmonize the jury statements with the verdict as is done when a jury submits written answers to questions accompanying a general verdict form pursuant to Rule 49(b) of the Federal Rules of Civil Procedure. *See Gallick v. Balt. & O. R. Co.*, 372 U.S. 108, 119 (1963) ("'Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.'" (quoting *Atl. & Gulf Stevedores, Inc., v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962))).

[4]Patterson does not raise whether or not the jury statements are appropriate for our review on appeal. As expressed at oral argument, our consideration of the jury statements strikes us somewhere in between the unreviewable statements of a jury when interviewed by an attorney after trial and the reviewable written answers given in tandem with a general verdict form as requested by the court. *Compare United States v. Krall*, 835 F.2d 711, 716 (8th Cir. 1987) *and* Fed. R. Evid. 606(b), *with* Fed.

does not compel us to overturn the jury verdict. Patterson relies principally upon inconclusive medical expert testimony that *might* contradict the jury's verdict. Even the medical experts, however, could not establish the causal link between any specific use of force and Patterson's injuries. Thus, we affirm the district court's denial of Patterson's motion for a new trial.

## C. *Granting of Summary Judgment*

Patterson argues that the district court erred in granting the officers' and the City's motion for summary judgment. Specifically, Patterson argues that the grant of summary judgment denied Patterson his right to a jury trial under the Seventh Amendment of the United States Constitution. Patterson also contends that his lack of financial resources prevented his use of discovery tools necessary to defend against the motion.

Patterson appears to bring a facial constitutional challenge to summary judgment as a procedural mechanism for resolving cases. In doing so, he fails to cite any controlling or convincing legal authority to support this argument. Additionally, Patterson similarly fails to support his argument that his indigency should be taken into consideration at the summary judgment stage. Patterson's general statements of dissatisfaction with the legal system and the process in the instant case do not suffice to warrant reversal of the grant of summary judgment below. *See Milligan v. City of Red Oak, Iowa*, 230 F.3d 355, 360 (8th Cir. 2000) (per curiam) (finding that an argument made in passing that is not supported "with any argument or legal authority" is waived and need not be addressed). We affirm the district court's disposition.

---

R. Civ. P. 49(b). The jury statements in this case are more analogous to the latter.

### III. *Conclusion*

For the foregoing reasons, we affirm the district court's denial of Patterson's motion for a new trial as well as its grant of summary judgment in favor of the officers and the City.

_____