AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, *et al.,* Plaintiff-Appellee, *v.* VILLAGE OF WINFIELD, Defendant-Appellant.

(No. 70-283; ▮▮▮▮▮▮)

Second District—October 5, 1971.

▮▮▮▮▮▮

Hinshaw, Culbertson, Moelman, Hoban & Fuller, of Wheaton, for appellant.

Melvin M. Landau, and Walter Bard Carroll, of Chicago, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The Village of Winfield appeals from a decree which declared a single family zoning ordinance invalid as to plaintiff's property and permitted a proposed multi-family use.

The rectangularly shaped, 32 acre tract is presently vacant. It is bounded on the north by a DuPage County Forest Preserve; on the east by the west branch of the DuPage River, across which there is a shopping center and beyond that the Central DuPage Hospital which occupies approximately 40 acres. It is bounded on the west by a vacant tract now owned by the West Chicago High School District, and on the south by Winfield High Lake Road, with the tracks of the Chicago North Western Railroad—elevated some 8 to 10 feet—immediately south of that road.

A large portion of the subject property is low land bordering the river. There was testimony that 70% of the site was within the flood plain of the 1954 flood of record.

There was evidence that the cost of providing fill to develop the property for single family residential purposes would run from an economically feasible $4192 an acre if hauled within a half mile from the site, to as high as an uneconomic $12,577 an acre if from a greater distance. There was evidence that if the property were developed as an apartment complex, it could be designed so no dirt would have to be hauled.

The value of the property as presently zoned was testified to be $6000 an acre compared to $33,000 an acre if rezoned for multiple family with a density of 22 units per acre.

Plaintiff's witnesses testified that the highest and best use of the property was for the proposed multi-unit development. There was no testimony by any witnesses that the planned development would have any deleterious effect on surrounding property in the area.

The principal issue raised by the Village relates to the management of water resources and the general effect on the public welfare when building on the flood plain. The argument of the defendant that the proposed use would be adverse to the public interest in preserving the flood plain and water recharge area is based principally upon the testimony of Dr. John R. Sheaffer, a recognized expert on water resource problems. Dr. Sheaffer testified that the tract was a prime natural recharge area, not only for Winfield but for much of central and western DuPage County. The thrust of this testimony was that the public welfare demanded a minimum distortion of a natural condition in order to preserve the storage capacity and water recharge function of the subject acreage; that, preferably, it should be left in an open state and devoted to some type of recreational or park use; and if developed at all, it should be developed

for single family use by raising the homes on stilts or by fill over the flood stage, since conservative development for single family residences would be as disastrous to the flood plain as an apartment project. It was his opinion that the proposed artificially created reservoir lake could not effectively serve the flood control function that the area in its natural states serves because this would merely expose the subsurface water which is already present and nearly always at saturation level and would not control additional rainfall or flood water. Dr. Sheaffer could not disagree with the testimony of the plaintiff's architect that single family homes would result in substantially the same amount of impermeable coverage as the proposed apartment complex.

Dr. George H. Otto, a consulting geologist and soil conservationist, also a recognized expert, testified for the plaintiff with a different view. In his opinion, the flood plain area could be preserved and the recharge area to a large extent preserved by the proposed creation of a lake and the proper direction of water drainage from roofs and parking areas. In his opinion, less than 1% of the percolation in the flood plain of the west branch of the DuPage River is affected by the premises in question. He testified that a design to protect the ground water could be economically used for the apartment project but could not economically be available for single family residence development on the tract. In his opinion a single family residential development could not be designed to maintain the same amount of water percolation, as would be maintained with an apartment complex of the type in question.

The trial court noted that Dr. Sheaffer's testimony regarding single family development of the subject property involved some highly impractical considerations and was not corroborated by any witnesses or experts from the standpoint of building, land appraisal or land planning.[1] In our view, the court properly assessed the legal effects of the testimony and evidence in concluding that the plaintiffs had sustained their burden of proof to overcome the presumption of validity of the

---

[1] It is apparent to us from the record that a number of the witness's suggestions relative to planning the site for single family development did not take into account the applicable building or zoning restrictions of the Village, or reasonably convenient access to the homes. For example, he recommended that single family residences be constructed on pillars, raising the residences 6 feet above ground level and was unaware that the Village ordinance required the first floor level of a residence to be 3 feet above flood plain. He recommended that streets be laid in a position where they would be under 6 feet of water during flood stage which he described as an "inconvenience" but was apparently unaware that the Village ordinances required all street embankments to be raised at least 1½ feet above high water. His recommendation of a cluster of single family houses would have been contrary to the Village ordinance. His recommendations as to the placement of houses on the lots would have violated the Zoning Ordinance of the Village.

zoning ordinance, and their burden of proving that the ordinance was arbitrary insofar as it prevented plaintiffs from using the property for their planned development project. See *Frost v. Vil. of Glen Ellyn* (1964), 30 Ill.2d 241, 246; *Liebling v. The Village of Deerfield* (1961), 21 Ill.2d 196, 201; *LaSalle Nat. Bk. v. Cook County* (1964), 28 Ill.2d 497, 500, 501; *LaSalle Nat. Bk. v. City of Evanston* (1962), 24 Ill.2d 59, 63, 64; *LaSalle Nat. Bk. v. Vil. of Grayslake* (1963), 29 Ill.2d 489, 492.

The ultimate question presented by this case is not whether ideally any impairment of the natural state of the subject property should be allowed but rather, whether the present ordinance is unreasonable in restricting the land to single family uses and precluding the multiple family use. Thus, we think the trial court properly observed that maintaining the property for open recreation or park purposes, in accordance with the decisive portions of Dr. Sheaffer's testimony, would be beneficial to the general public; but that this was not the issue. As the trial court noted, the public may acquire the flood plain and water recharge areas by eminent domain, but cannot require plaintiffs to bear a greater burden than other property owners in supplying public facilities. The result of the trial court's holding was to permit the highest and best use of the property but with due regard for engineering solutions which would be in the public interest of preserving as much of the flood plain and water recharge area as possible. The decree was therefore made subject to approval of plaintiff's engineering plans by the Village engineer. The finding that this condition has been met is included in the supplemental decree.

We, therefore, affirmed the judgment below.

Judgment affirmed.

MORAN, P. J. and SEARS, J., concur.