ACCO UNLIMITED CORP. and
Andrew Christenson,
Appellants,

v.

CITY OF JOHNSTON, Iowa, Appellee.

No. 98–580.

Supreme Court of Iowa.

June 1, 2000.

Frank Murray Smith of Frank M. Smith Law Office, Des Moines, for appellants.

J. Russell Hixson of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, and Lee H. Gaudineer, Jr. of Austin, Gaudineer & Comito, L.L.P., Des Moines, for appellee.

LARSON, Justice.

The City of Johnston, Iowa, condemned land owned by Andrew Christenson for flood control purposes, and he and his tenant, ACCO Unlimited Corp., sought declaratory and injunctive relief in a suit against the city. The district court denied relief, and the plaintiffs appealed. We affirm.

**I. *Facts and Prior Proceedings.***

Andrew Christenson owned approximately eighteen acres in Johnston, which he leased to ACCO Unlimited, a corporation solely owned by him. (We will refer to them collectively as Christenson.) Christenson contends the city illegally con-

demned approximately ten acres of his land. Johnston lies at the confluence of Beaver Creek and the Des Moines River. Flooding of the area has been a problem for many years, and a disastrous flood in 1993, caused by the simultaneous overflow of Beaver Creek and the Des Moines River, prompted the city council to take action. The area, which had also flooded in 1960, 1966, 1972, 1974, 1979, 1986, and 1990, was likely to flood even more frequently as the city's expansion caused increased runoff into the drainage area. One witness estimated that over 200 homes per year were being built in the city.

The property involved in this appeal is located between Merle Hay Road on the west and Beaver Road and the Des Moines River on the east. Interstate 80 and Beaver Creek border the land on the south, and a new street, Johnston Drive, borders it on the north. Johnston Drive lies in an east-west direction, extending from Merle Hay Road to Beaver Drive. The original Christenson property was a triangular piece of land, which is now bisected by the new street. Only that property lying south of the new street is involved in this controversy.

All of the areas described above are within the "100–year floodplain." This is a designation arising out of a 1981 flood insurance study of the flood potential of given areas. The study is based on a flood occurrence that has a probability of reoccurring once every 100 years, or a one percent chance of happening every year. Under the study, the extent of the 100–year floodplain is determined by considering the drainage basin, the type of development in the drainage basin, and the type of runoff that can be expected. As previously noted, the area in question has exceeded expectations, flooding eight times since 1960. If obstructions or structures are placed within the floodplain, it adversely affects the water flow and the storage capacity of the area. One of the purposes of designating an area as a floodplain is to

discourage construction of structures and to limit damage in the event of a flood. Christenson's primary argument in this case is that development of the area in question could have been discouraged by means short of condemnation.

After the flood of 1993, the Christenson property and the Beaverdale Little League property, which adjoined it, were under several feet of water for up to two weeks. Along what is now Johnston Drive, which bisects Christenson's land, the water stood to depths of five feet.

Following the 1993 flood, the Economic Development Administration (EDA) of the United States Department of Commerce made federal flood relief grants available to cities in Polk County to provide funds for construction of public improvements to protect property from future damage by flood waters. Johnston applied for one of these grants. The city sought to fund construction of a new access-connector street, now constructed and known as Johnston Drive, and other improvements. However, the EDA balked; it was concerned that the proposed Johnston Drive would stimulate development in the floodplain adjacent to the new street, including the Christenson and Beaverdale Little League properties. This was a concern because a federal executive order required federal agencies to "reduce the risk of flood loss, to minimize the impact of floods on human safety, health and welfare, and to restore and preserve the natural and beneficial values served by flood-plains...." Another concern was that the filling of the properties incident to development would decrease the water storage capacity of the floodplain. The city determined that, due to "the lay of the land," the filling that would accompany development of the Christenson and Beaverdale Little League properties would adversely affect the 100–year floodplain.

Before it would award any grant money, the EDA required the city to get assurances from the property owners in the floodplain that they would not develop the area inside the floodplain. The little league furnished such an assurance, stating it would continue to use it as little league baseball diamonds. Christenson, however, expressed a desire to develop the southern part of his property in the floodplain—action the agency believed would increase flood problems. (Only Christenson's and the little league's properties were of concern; development of the other properties would not substantially affect the floodplain.)

In an attempt to satisfy the EDA's concerns, the city council passed Resolution 94–72, stating it would discourage development in the floodplain. The resolution, however, did not satisfy the EDA, and as a condition to receiving the grant, the EDA required the city to provide evidence it had either acquired the Christenson property, obtained restrictive covenants, or rezoned it as a conservation district in order to assure it would not be developed. The city began condemnation proceedings against Christenson's property, which were set to begin on February 27, 1996.

On February 16, 1996, Christenson filed suit against the city seeking a permanent injunction and declaratory relief. Christenson filed an amended petition for temporary and permanent injunctions and declaratory relief on February 20, 1996. On February 26, the district court denied the temporary injunction.

On February 27, 1996, a condemnation commission awarded damages for the taking of the land—$122,600 to Christenson as the titleholder, $30,000 to ACCO as tenant, and an additional $400 to Christenson for the taking of a temporary easement, as well as $2500 in attorney fees. Christenson appealed the amount of the award to the district court but did not challenge the legality of the commission's taking of the land.

In the meantime, the present equity case proceeded to trial on October 28, 1997. Christenson sought to have the condemnation nullified as illegal. On Febru-

ary 20, 1998, the district court issued its findings of fact and conclusions of law, finding the city had a legitimate public purpose in condemning the Christenson property and dismissing his petition for declaratory and injunctive relief. Christenson appealed. After Christenson appealed his equity case, his appeal challenging the amount of damages awarded by the condemnation commission was resolved. In that case, the district court substantially increased the damages awarded for the condemnation. The city appealed this ruling, but the parties settled on the amount of the award, and the city dismissed its appeal. Based on the parties' agreement, the city filed a motion to dismiss Christenson's present appeal on election-of-remedy grounds. The motion was ordered submitted with the appeal. Because we reject Christenson's constitutional arguments on their merits, it is unnecessary to address the city's motion to dismiss.

## II. *The Constitutional Arguments.*

Christenson complains the city's taking of his land violated his procedural and substantive due process rights and denied him equal protection of the law. All of his constitutional arguments seem to be based on his assumption that the city could have accomplished its desired purpose of preventing development of the land in question by less intrusive methods than condemnation.

■ A. *Procedural due process.* According to Christenson's procedural due process argument, the condemnation of his land for the purpose of maintaining it in its present unimproved state went too far, and "Johnston did not need to obtain fee title to ACCO/Christenson's land to effect its purpose [of maintaining it in its present state]." In effect, he argues the condemnation was overkill because Christenson could not have improved the land without a floodplain development permit and that if the city desired to prevent his development of the area it could simply have denied the permit. Further, according to

his argument, this was a condemnation for conservation purposes, and the condemnation of a conservation easement is expressly prohibited by Iowa Code section 457A.1 (1995):

> The department [of natural resources], any county conservation board, and any city or agency of a city may acquire by purchase, gift, contract, or other voluntary means, but not by eminent domain, conservation easements in land to preserve scenic beauty, wildlife habitat, riparian lands, wet lands, or forests, promote outdoor recreation, or otherwise conserve for the benefit of the public the natural beauty, natural resources, and public recreation facilities of the state.

A "conservation easement" is defined as an "easement in, servitude upon, restriction upon the use of, or other interest in land owned by another, created for any of the purposes set forth in section 457A.1." Iowa Code § 457A.2. Christenson argues the city's action was not taken to condemn a fee, as the city claims, but was actually a conservation easement expressly prohibited by Iowa Code section 457A.1. Christenson also contends, as a part of his procedural due process argument, that the city should have followed the statutory procedure for rezoning in order to regulate the future use of the land.

The problem with both of these arguments is they proceed from the assumption the city was attempting to obtain a de facto rezoning or a de facto conservation easement (apparently because the city was planning to leave the area in its status quo). The fact is the city did not attempt either; it simply condemned the land for flood control purposes, a valid object of condemnation as we discuss later. We find no merit in the plaintiffs' procedural due process arguments.

B. *Substantive due process.* Christenson's substantive due process claims closely track his arguments concerning procedural due process. He claims "there are certain governmental actions that, even if

undertaken with a full panoply of procedural protection, are, in and of themselves, antithetical to fundamental notions of due process," quoting *Parratt v. Taylor*, 451 U.S. 527, 545, 101 S.Ct. 1908, 1918, 68 L.Ed.2d 420, 435 (1981) (Blackmun, J., concurring).

Christenson's argument is again that the condemnation was overkill; the city should have controlled the usage of the land by pursuing Resolution 94–72, under which use of a floodplain would be maintained in its status quo by measures short of acquiring title to the land. These could include the refusal by the city to extend municipal services to the area or restricting the issuance of floodplain development permits.

Instead of adopting these measures, the city simply condemned the land. Christenson says this "action is so egregious and irrational that the action exceeds standards of inadvertence and mere errors of law," and the city's action is "conscience shocking." Christenson presents the action as one solely aimed at receiving the EDA funding to construct the connector street between Beaver Avenue and Merle Hay and not a flood control measure.

■ Under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, a state is forbidden from infringing on "certain fundamental liberty interests, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *In re C.S.*, 516 N.W.2d 851, 860 (Iowa 1994). When the right infringed is not fundamental, substantive due process demands no more than "a 'reasonable fit' between governmental purpose ... and the means chosen to advance that purpose." *Id.* at 861 (quoting *Reno v. Flores*, 507 U.S. 292, 305, 113 S.Ct. 1439, 1448–49, 123 L.Ed.2d 1, 18 (1993)).

■ Christenson does not claim the condemnation of his property violates a fundamental right, and no cases would support such an argument. Because that is so, the condemnation of his property is analyzed to determine if there is a "reasonable fit" between the governmental purpose, flood control, and the means chosen to advance that purpose. *In re C.S.*, 516 N.W.2d at 861. Under this analysis, the city's subjective intent as attributed to it by Christenson is irrelevant if flood control is an appropriate reason for the condemnation.

■ Eminent domain is the power of a governmental entity to take private property for a public use without the owner's consent. *Comes v. City of Atlantic*, 601 N.W.2d 93, 95 (Iowa 1999). Chapter 6A of the Iowa Code provides for the use of eminent domain:

> Proceedings may be instituted and maintained by the state of Iowa, or for the use and benefit thereof, for the condemnation of such private property as may be necessary for any public improvement which the general assembly has authorized to be undertaken by the state, and for which an available appropriation has been made.

Iowa Code § 6A.1. This power has also been granted to cities "for public purposes which are reasonable and necessary as an incident to the powers and duties conferred upon cities." Iowa Code § 6A.4(6). Before a city may invoke its powers of eminent domain, Iowa law imposes two requirements: the property must be taken for a public use, and the taking must be reasonable and necessary. *Comes*, 601 N.W.2d at 95. Here, the city condemned Christenson's property for the purpose of maintaining the floodplain and of maintaining the water storage capacity of the property in question.

Apparently, no Iowa case has considered the propriety of using eminent domain to take a floodplain for purposes of maintaining it in its status quo. Such power in a governmental body, however, is implicit in our law. For example, in *Iowa Natural Resources Council v. Van Zee*, 261 Iowa 1287, 158 N.W.2d 111 (1968), we considered a statute empowering the Natural Resources Council to bring an action to abate a nuisance in a floodway adversely affecting the capacity of the floodway to

hold water. We held the statute was a proper exercise of police power and eminent domain. *Iowa Natural Resources Council*, 261 Iowa at 1297–98, 158 N.W.2d at 118.

In addition, the Code allows a city to "exercise any power and perform any function it deems appropriate to protect and preserve the rights, privileges, and property of the city or of its residents, and to preserve and improve the peace, safety, health, welfare, comfort, and convenience of its residents." Iowa Code § 364.1. Further, the Code provides that general obligation bonds may be issued to carry out "essential corporate purposes." Among such purposes is:

> The acquisition, construction, reconstruction, and improvement of all waterways, and real and personal property, useful for the protection or reclamation of property situated within the corporate limits of cities from floods or high waters, and for the protection of property in cities from the effects of flood waters, including the deepening, widening, alteration, change, diversion, or other improvement of watercourses, within or without the city limits, the construction of levees, embankments, structures, impounding reservoirs, or conduits, and the establishment, improvement and widening of streets, avenues, boulevards, and alleys across and adjacent to the project, as well as the development and beautification of the banks and other areas adjacent to flood control improvements.

Iowa Code § 384.24(3)(i).

Other jurisdictions have approved condemnation proceedings for flood control purposes. *See, e.g., American Nat'l Bank & Trust Co. v. Village of Winfield*, 1 Ill. App.3d 376, 274 N.E.2d 144, 146 (1971) (the public may acquire the floodplain area by eminent domain); *Winters v. City of Columbus*, 735 So.2d 1104, 1108 (Miss.Ct. App.1999) (ameliorating impact of flooding and drainage on many private lands as well as to public facilities and lands may constitute public use); *Hill v. City of Han-*

*ahan*, 281 S.C. 527, 316 S.E.2d 681, 684 (Ct.App.1984) (taking of land for drainage and flood control purposes is compensable in action for inverse condemnation); *Farmers New World Life Ins. Co. v. Bountiful City*, 803 P.2d 1241, 1245 (Utah 1990) (city's construction of culvert was in support of flood control program and was public use within meaning of Utah constitutional provision governing inverse condemnation claims).

Condemning Christenson's land for the purpose of maintaining the floodplain and preserving the water storage capability of the land is a reasonable and necessary public purpose for which condemnation may be used. We reject Christenson's substantive due process arguments.

C. *Equal protection.* Christenson's third constitutional argument is he was denied equal protection of the law because of disparate treatment of his land and the land of the Beaverdale Little League, which, although it was also in the floodplain, was not condemned.

■ Christenson concedes his claim does not involve a fundamental right or suspect classification, so a heightened level of scrutiny is not appropriate. He contends, however, the city's action cannot be upheld even under the less stringent rational-basis test. Under this test, Christenson must negate every reasonable basis that may support the disparate treatment. *See Suckow v. NEOWA FS, Inc.*, 445 N.W.2d 776, 779 (Iowa 1989).

As Christenson notes, the properties are subject to similar zoning. The industry-zoned portions of each property are in the same tax increment financing district, they are located in the same 100–year floodplain, each is currently being used in a means consistent with Johnston's conservation district and floodplain management ordinances, and neither owner had yet filled or developed the industry-zoned portions of their property. It may in fact be conceded that the owners of the property are similarly situated for equal protection purposes, but that is only part of the analysis; Christenson must also negate every

basis for their disparate treatment. *Id.* He has not done so.

The city's decision to condemn the Christenson property and not the little league property bears a rational relationship to flood control. The little league agreed to not develop their property and to maintain it at the current condition. (Obviously, if the little league's use of their land changes in the future, condemnation would be an option.) However, Christenson did not give a similar assurance. In fact, he expressed an interest in developing his part of the floodplain. The city's decision to condemn the Christenson property but not the little league property bears a rational relationship to the city's interest in promoting flood control. The condemnation did not violate Christenson's equal protection rights.

**AFFIRMED.**

All justices concur except CADY, J., who takes no part.