# IN THE COURT OF APPEALS OF IOWA

No. 24-1648
Filed October 29, 2025

**ENTERPRISE PRODUCTS OPERATING, LLC,**
 Petitioner-Appellant,

**vs.**

**IOWA UTILITIES COMMISSION,**
 Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,
Judge.


A pipeline owner appeals the district court's ruling on judicial review
affirming the Iowa Utilities Commission's imposition of civil penalties for violations
of Iowa Code chapter 479B's permit requirements. **AFFIRMED.**


Robert V.P. Waterman Jr. (argued) of Lane & Waterman LLP, Davenport,
David J. Hellstern (until withdrawal), Amanda A. James, and Andrew Carlson (until
withdrawal) of Sullivan & Ward, P.C., West Des Moines, Kent Rutter (pro hac vice)
of Haynes and Boone, LLP, Houston, Texas, and John D. Fognani (pro hac vice)
of Haynes and Boone, LLP, Denver, Colorado, for appellant.

Michelle E. Rabe (argued) and Jon C. Tack (until withdrawal), Iowa Utilities
Commission, for appellee.


Heard at oral argument by Chicchelly, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

Enterprise Products Operating, LLC seeks judicial review of the Iowa Utilities Commission's order imposing civil penalties totaling $1.8 million for nine violations of Iowa's permit requirements for interstate hazardous liquid pipelines and underground storage facilities that each continued for 7535 days. Enterprise raises three claims. First, it argues that the Commission erred in deciding that Enterprise's pipeline system required nine permits—rather than just one—and thus finding that Enterprise committed nine violations of the permit requirements every day rather than just a single daily violation. Second, it argues that even if nine permits were required, its failures to obtain multiple permits would still constitute only one "related series of violations" under Iowa Code section 479B.21(1) (2023)—thus limiting the Commission's authority to impose any more than $200,000. And third, it argues that the Commission violated article I, section 6 of the Iowa Constitution "by imposing a substantially larger penalty against Enterprise than for similarly situated pipeline and utilities companies."

We cannot consider Enterprise's first claim because it did not preserve error on that issue before the Commission or the district court. The Commission correctly interpreted section 479B.21(1) to only cap the total amount of daily $1000 penalties for a series of continuing violations authorized in the statute's immediately preceding sentence—rather than all related violations as Enterprise urges. And the Commission did not violate Enterprise's equal-protection right under article I, section 6, of the Iowa Constitution because Enterprise did not receive different treatment than similarly situated companies. We thus affirm the Commission's order and the district court's judgment.

## I.     Background Facts and Proceedings

Enterprise owns and operates a hazardous-liquid-pipeline system that crosses many states—including Iowa—carrying propane, butane, ethane, and natural gas to Iowans.  This pipeline system—known as the "Mid-America Pipeline System"—was originally built and owned by the Mid-America Pipeline Company in the early 1960s.  In November 1997, Williams Natural Gas Liquids, Inc. acquired that corporation and converted it to an LLC with essentially the same name—Mid-America Pipeline Company, LLC.  Then in July 2002, Enterprise purchased a 98% ownership interest in Mid-America Pipeline Company, LLC, and with it, acquired the entire Mid-American Pipeline System—including the 750 miles of pipeline and underground storage facilities in Iowa.

As the pipeline system changed hands, Iowa's pipeline regulation law also underwent significant change.  When the system was built, Iowa Code chapter 490 regulated interstate and intrastate transportation of hazardous liquids by pipeline.  Under that chapter, a pipeline company was required to obtain a permit from the Commission[1] before constructing, operating, or maintaining a pipeline or underground storage facility for the transportation of gas or hazardous liquids within the state.  *See* Iowa Code § 490.5 (1958).  And the Mid-America Pipeline Company was issued at least seven pipeline permits and two underground-storage

---

[1] The Commission was then known as the Iowa State Commerce Commission. *See* Iowa Code § 490.5 (1958).  In 1986, it was renamed as the Iowa Utilities Board.  *See* 1986 Iowa Acts ch. 1245 § 740.  And it was renamed as the Iowa Utilities Commission effective July 1, 2024, while this case was pending in the district court.  *See* 2024 Iowa Acts ch. 1170 § 369(2).  We use its current name consistently throughout this opinion.

permits as it constructed its pipeline system. Some of the permits were later amended to add additional pipeline and nearly all were renewed in the late 1980s.

But in 1993, the Eighth Circuit held that these permitting requirements—which by then had moved to Iowa Code chapter 479—were preempted by federal law when applied to interstate hazardous liquid pipelines.[2] *See Kinley Corp. v. Iowa Utils. Bd.*, 999 F.2d 354, 359–60 (8th Cir. 1993). The court reasoned that the Hazardous Liquid Pipeline Safety Act of 1979 expressly preempts any regulation of the safety of interstate hazardous liquid pipelines and that the "hearing, permit and inspection provisions of Chapter 479 are so related to federal safety regulations that they are preempted" too. *Id.* at 360. And it held that "environmental and damage remedies provisions are not severable from the preempted hearing, permit and inspection provisions and thus are preempted as well." *Id.*

The Iowa legislature responded to the Eighth Circuit's partial invalidation of chapter 479 two years later. First, it amended chapter 479 to exclude interstate hazardous liquid pipelines. *See* 1995 Iowa Acts ch. 192, § 6 (codified at Iowa Code § 479.2(2)–(3) (2023)). And second, it enacted a new chapter—chapter 479B—to govern such pipelines without regulating their safety. *See* 1995 Iowa Acts ch. 192, §§ 28–58 (codified at Iowa Code ch. 479B). Like the invalidated

---

[2] As we cannot locate any legislative act making the change, it appears that chapter 490 was transferred to chapter 479 without any substantive modification by the code editor in the preparation of the 1977 Iowa Code. *See* Iowa Code ch. 479 (1977); *id.* ch. 490 (noting only "Transferred to chapter 479"); *see also id.* § 14.16 (providing that "[a]ll sections of law of a general nature enacted after the last preceding Code shall be inserted in each new edition in such logical order as the editor of the Code may determine").

chapter 479, chapter 479B requires a pipeline company to seek a permit "to construct, maintain, and operate a new pipeline" or underground storage facility in Iowa. *See* Iowa Code § 479B.4(1) (2023).[3] And recognizing the existing pipelines and facilities without permits, it provides, "Any pipeline company now owning or operating a pipeline or underground storage facility in this state shall be issued a permit . . . upon supplying" a subset of the information normally required for new permits and meeting certain financial-condition requirements. *Id.* These changes became effective immediately upon enactment in May 1995.

The parties agree that after the Eighth Circuit's decision and the responsive statutory changes, any permits issued for interstate hazardous liquid pipelines under chapter 479—including the permits issued for the Mid-America Pipeline System—were invalid. And it is undisputed that the Mid-America Pipeline Company never sought the required new permits under chapter 479B before it was acquired by Williams. Neither did Williams obtain the required permits over the next five years before it sold the pipeline system to Enterprise in July 2002. Yet in the purchase agreement, Williams "represent[ed] and warrant[ed]" that "all licenses, permits and authorization" needed for the pipeline system were in place. And Enterprise too did not seek the required permits under chapter 497B.

Fast forward almost twenty-one years. On February 6, 2023, the Commission issued an order notifying Enterprise that it had discovered

---

[3] We generally cite to the 2023 Iowa Code because it was in effect when the Commission took its action imposing the civil penalties on Enterprise. But the material language of the permit requirements in section 479B.4(1) and the civil-penalty authorization in section 479B.21 has not changed since Enterprise acquired the Mid-America Pipeline System in 2002.

"approximately 750 miles of hazardous liquid pipeline in Iowa owned and operated by Enterprise" and that the Commission's records showed "Enterprise lacks the necessary permit or permits and is in violation of Iowa Code chapter 479B." The Commission thus ordered Enterprise to respond with details about all its pipelines in Iowa and an explanation of "why it has been operating without the necessary permit or permits." The Commission also set a show-cause hearing in mid-March for Enterprise "to explain . . . why it is operating hazardous liquid pipelines in Iowa without a permit and why it should not be subject to civil penalties."

At the March hearing and in its written submissions, Enterprise explained that it was unaware of Iowa's permit requirement, that Williams had warranted that all permit requirements were satisfied at sale, and that it believed the only applicable regulations were federal—which Enterprise followed. It also submitted a preliminary "draft petition" "requesting a permit be issued under Iowa Code 479B for the subject pipelines." And so, Enterprise argued that its violations did not warrant a penalty because they had not impacted the public negatively and because it was showing a good-faith effort to cure the issue and cooperate with the Commission.

One month later, the Commission issued an order imposing $1.8 million in civil penalties on Enterprise. The Commission found that Enterprise had been operating nine "hazardous liquid pipelines and underground storage facilities without permits for 21 years in violation of Iowa Law." It calculated that each of these violations continued for 7535 days—from when Enterprise acquired the pipeline system until it petitioned for a permit. And the Commission noted that this "could have resulted in a $7.535 million civil penalty per pipeline and underground

storage facility" and a grand total of $67.815 million in penalties—but for the fact that "the statute caps the civil penalty at $200,000 per pipeline and underground storage facility."

In deciding the appropriate civil penalties to actually impose, the Commission reasoned that "Enterprise is a multibillion-dollar company, with operations beyond the boundaries of the State of Iowa, which has been operating the hazardous liquid pipelines and underground storage facilities as described above for nearly 21 years without a permit."[4]  The Commission found "having a permit to be of the utmost importance," explaining that the permit requirement "is the cornerstone for all requirements" under the governing statutes and administrative rules, including "having a land restoration plan, ensuring compliance with reporting requirements, seeking permission before modifying the hazardous liquid pipeline, and obtaining permission before transferring a permit to ensure the new hazardous liquid pipeline knows and will comply with Iowa law and the Board's rules."  And it reasoned that the risk of the permit violation undermining these other requirements thus "compounds the seriousness of the violation."

The Commission conceded that "Enterprise did file a petition for hazardous liquid pipelines expeditiously upon notice from the Board."  But it concluded that "this does not overshadow the previous 21 years of noncompliance" given the "well-settled law that lack of knowledge of the law is not a defense to a violation of the law."  And so, the Commission imposed a $200,000 civil penalty for each of the nine ongoing permit violations—resulting in total civil penalties of $1.8 million.

_____

[4] The Commission took note of Enterprise's website providing information for investors, which disclosed that Enterprise's market capitalization was $55.9 billion.

Enterprise moved for rehearing and reconsideration of the Commission's order. It argued that the Commission exceeded its statutory authority because "the maximum statutory penalty is capped at $200,000—not $1.8 million—under the plain language of Iowa Code § 479B.21(1)" since "[e]ach of the nine specific alleged violations are necessarily related and constitute the same series of related 'violative' events." And it claimed that the Commission's order violated its equal-protection rights under the state and federal constitutions because it was not treated the same as other pipeline companies.[5]

The Commission denied Enterprise's motion. It rejected the argument that it exceeded its statutory authority under section 479B.21(1), reasoning that "the lack of a permit for each hazardous liquid pipeline and hazardous liquid underground storage that was formerly permitted constitutes its own related series of violations for which the [Commission] has discretion to levy civil penalties individually." And the Commission rejected Enterprise's equal-protection challenge because it was "comparing dissimilar issues."

Enterprise then petitioned for judicial review of the Commission's decision under Iowa Code chapter 17A. In addition to its main claim that the Commission lacked statutory authority to impose $1.8 million in civil penalties because its nine violations were "a distinctly related series, subject to a maximum penalty of $200,000," Enterprise intermingled an argument that it only "failed to secure one

---

[5] Enterprise also raised other issues no longer relevant on appeal—arguing that the Commission (1) violated its due-process rights; (2) should exercise its discretion to impose lower civil penalties; (3) must keep certain information that it submitted confidential; and (4) and should extend the penalty-payment deadline. Enterprise separately moved for a stay of the Commission's order.

permit for *one* pipeline" and so it committed only "one ongoing violation of the permitting laws." And along with claims it no longer asserts on appeal, Enterprise again argued that the Commission violated its equal-protection rights under article I, section 6, of the Iowa Constitution because "similarly situated companies have received no or significantly less harsh financial penalties under similar circumstances."

The district court disagreed with Enterprise and affirmed the Commission's order imposing $1.8 million in civil penalties. On Enterprise's statutory-authority claim, the court framed the question as "defining the phrase: 'any related series of violations' to determine what . . . maximum civil penalty [that] law authorizes." Relying on the text and structure of the statute, the court reasoned that the phrase applied to cap the penalties for a particular violation ongoing for multiple days and not "for the whole of multiple charged violations." The court did not address Enterprise's intermingled argument that it committed only one ongoing violation. And on the equal-protection claim, the court conducted a careful comparison of the Commission's treatment of Enterprise and the most similar comparator company and found no constitutional violation given the factual differences. The court explained that the statute requires the Commission to "assess each situation individually to determine the appropriate penalty" and "the penalties will vary based on the [Commission's] findings for each individual situation."

Enterprise did not move for reconsideration or enlargement of the district court's ruling under Iowa Rule of Civil Procedure 1.904. Instead, it filed this appeal.

## II.     Error Preservation on the Number of Required Permits

Enterprise first argues that the Commission erred in finding that its pipeline system required nine permits—rather than just one—and thus that Enterprise committed nine violations of the permit requirements every day rather than just a single violation. According to Enterprise, the maximum civil penalty for this series of violations would then be $200,000. But Enterprise failed to preserve error on this issue. So we cannot consider its merits.[6]

To preserve error in a judicial-review proceeding under chapter 17A, a party must raise the issue before—and obtain a decision from—both the agency and the district court. *See Archer Daniels Midland v. Williams*, 3 N.W.3d 231, 236 (Iowa Ct. App. 2023); *Hill v. Fleetguard, Inc.*, 705 N.W.2d 665, 670–71 (Iowa 2005). Because a judicial-review proceeding is appellate in nature, a party cannot wait to raise an issue "for the first time during judicial review." *Williams*, 3 N.W.3d at 236. And even when the party raises an issue to the district court, if the court fails to decide it, "the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal." *Hill*, 705 N.W.2d at 670–71.

Enterprise did not preserve error on this issue before the Commission or the district court. Before the Commission, Enterprise did not raise the issue at the show-cause hearing or in its motion for rehearing and reconsideration. So understandably, neither the Commission's original order nor its order denying rehearing and reconsideration considered whether Enterprise only needed a single permit. In the district court, Enterprise did raise the issue. But this was too late.

---

[6] Given this holding, we deny as moot the Commission's motion to strike Enterprise's notice of additional authorities—the authorities cited are immaterial.

*See Williams*, 3 N.W.3d at 236. And even if we overlooked Enterprise's failure to preserve error before the Commission, merely raising the issue in the district court was not enough. The district court did not rule on the issue, and Enterprise did not move for reconsideration or enlargement asking the court to do so. *See Hill*, 705 N.W.2d at 670–71.

It matters not whether the Commission contests error preservation. Our error-preservation requirement protects more "than simply the interests of the opposing party." *Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000). "That is especially so in a judicial-review proceeding, which involves not just judicial resources, but the interests of another branch of government that we afford respect." *Linnhaven Inc. v. Blasdell*, No. 24-0333, 2024 WL 4619670, at *5 (Iowa Ct. App. Oct. 30, 2024) (cleaned up).

Because Enterprise failed to preserve error on its claim that it was only required to obtain a single permit, we proceed to consider just its two properly preserved claims—accepting the Commission's findings that it was required to obtain nine permits for its pipeline system and committed nine ongoing violations.

### III. The Maximum Civil Penalty Authorized by Section 479B.21(1)

Enterprise next argues that even if nine permits were required, its failure to obtain multiple permits would still constitute only one "related series of violations" under Iowa Code section 479B.21(1)—thus limiting the Commission's authority to impose any more than $200,000. So Enterprise challenges the Commission's contrary interpretation of section 479B.21(1) as erroneous under Iowa Code section 17A.19(10)(c). Under that provision of the Iowa Administrative Procedure Act, a court "shall reverse" an agency action "if it determines that substantial rights

of the person seeking judicial relief have been prejudiced because the agency action is . . . [b]ased upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency." Iowa Code § 17A.19(10)(c).

The Commission contends that the challenge should really be framed as review of the Commission's "application of law to fact," which a court can reverse only when the action is "[b]ased upon an irrational, illogical, or wholly unjustifiable application." *Id.* § 17A.19(10)(m). But we agree with Enterprise that the crux of this dispute is the interpretation of the statute's text setting the "maximum civil penalty . . . for any related series of violations." *Id.* § 479B.21(1). The Commission does not argue that any statute clearly vests interpretation of those terms in its discretion. And we see no basis in chapter 479B to conclude that the Commission has been vested that discretion for these generalized terms that are not uniquely within the expertise of the Commission. *See Mathis v. Iowa Utils. Bd.*, 934 N.W.2d 423, 427–28 (Iowa 2019); *cf. Summit Carbon Sols., LLC v. Kasichke*, 14 N.W.3d 119, 133 (Iowa 2024) ("'Liquified carbon dioxide' is a technical term within the special expertise of the [Commission]."). So we review the Commission's interpretation of section 479B.21(1) under section 17A.19(10)(c) for corrections of errors at law without any deference to the Commission's or district court's decisions. *See Mathis*, 934 N.W.2d at 428; *Carreras v. Iowa Dep't of Transp.*, 977 N.W.2d 438, 444 (Iowa 2022) (explaining that appellate courts apply the same statutory standards of judicial review of the agency action as the district court).

The legislature authorized the Commission to impose civil penalties for operating an interstate hazardous liquid pipeline or underground storage facility

without a permit—the same as any other violation of chapter 497B—in Iowa Code section 497B.21(1). That subsection provides in relevant part:

> A person who violates this chapter or any rule or order issued pursuant to this chapter shall be subject to a civil penalty levied by the commission in an amount not to exceed one thousand dollars for each violation. Each day that the violation continues shall constitute a separate offense. However, the maximum civil penalty shall not exceed two hundred thousand dollars for any related series of violations.

Iowa Code § 479B.21(1).[7] The meaning of the first two sentences is not disputed. Enterprise agrees that it violated the chapter, so the first sentence authorizes the Commission to impose a civil penalty of up to $1000 "for each violation." *Id.* And Enterprise agrees that "the second [sentence] clarifies that each day of noncompliance is a separate violation" that can each be penalized another $1000.

But the fight is joined at the third sentence, which sets "the maximum civil penalty . . . for any related series of violations" at $200,000. *Id.* According to Enterprise, this sentence caps the maximum civil penalty at $200,000 for all violations of chapter 479B so long as they are "related." And since Enterprise views the nine permit violations found by the Commission as related, it contends that the Commission could impose no more than a $200,000 civil penalty here. The Commission counters that the sentence has a narrower scope—only capping the "related series" of daily violations authorized in the sentence before. And so, it argues that the statute authorizes a civil penalty of up to $200,000 for each of the nine separate series of violations—as it imposed here.

---

[7] The subsection continues on to direct that any penalties collected are not kept by the Commission but rather used for Iowa's "low income home energy assistance program and the weatherization assistance program." Iowa Code § 479B.21(1).

The Commission has the better argument. We start with the text "of the statute as a whole." *Doe v. State*, 943 N.W.2d 608, 609 (Iowa 2020). Doing so calls on us "to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) [hereinafter *Reading Law*]. And here, the third sentence does not stand alone. It comes immediately after a sentence clarifying that the $1000 penalties "for each violation" can aggregate every day ("Each day that the violation continues shall constitute a separate offense.") and then adds a qualification to that sentence: "However, the maximum civil penalty shall not exceed two hundred thousand dollars for any related series of violations." Iowa Code § 479B.21(1).

Beyond just the physical placement, the use of "however" to start the third sentence shows that the third sentence is connected to—and qualifies—the preceding sentence. "However" used in this way means that the provision to follow contrasts with and is "in spite of" the provision before. *However*, *Merriam-Webster's Collegiate Dictionary* 563 (10th ed. 1997); *cf. In re Est. of Barz*, No. 21-0563, 2022 WL 2161430, at *2 (Iowa Ct. App. Jun. 15, 2022) (reasoning that "[b]y using 'however,' the legislature signaled that what followed would not conform to" and was "an exception to" the provision immediately before). Much like a proviso, this suggests that the third sentence is meant to be a limit just on the aggregation of violations authorized by the sentence immediately before it, rather than a sweeping cap on all violations authorized by the statute if they happen to be related. *Cf. Reading Law*, at 154 ("A proviso conditions the principal matter that it qualifies—almost always the matter immediately preceding."); *Martin v.*

*United States*, 145 S. Ct. 1689, 1697–98 (2025) (holding that a proviso in a statute applied to modify only the subsection in which it was placed).  And it is particularly appropriate to consider these physical and logical relations of the two sentences since they were enacted in the same legislative act.  *See* 1995 Iowa Acts ch. 192, § 48 (codified at Iowa Code § 479B.21); *cf. State v. Hall*, 969 N.W.2d 299, 309 (Iowa 2022) ("The contrast between the statutes is particularly revealing because both statutes were passed at the same time in the same piece of legislation.").[8]

The words used in the third sentence to identify what that sentence is capping at $200,000—"any related series of violations"—further support the connection between the sentences and the narrower scope of its cap.  The word "series" means "a number of things or events of the same class coming one after another in spatial or temporal succession."  *Series*, *Merriam-Webster's Collegiate Dictionary* 1069 (10th ed. 1997); *see also State v. Amsden*, 300 N.W.2d 882, 885 (Iowa 1981) (defining "series" in another statute to mean "a group of usually three or more things or events standing or succeeding in order and having a like relationship to each other" (cleaned up)).  Violations of a statute that accrue daily because the same violation continues align neatly with this definition.  So especially coming right after a sentence that authorizes such a related series of daily violations, the best reading of "any related series of violations" in the third sentence is that it refers back to the expressly described related series of violations

---

[8] The text that became the authorization for civil penalties in section 479B.21 appears to have been borrowed from the earlier invalidated chapter 479 that it replaced—just with reductions in the maximum penalty amounts from $10,000 to $1000 "for each violation" and from $500,000 to $200,000 "for any related series of violations."  Iowa Code § 479.31 (1995).

in the sentence before—violations repeating each day a pipeline company remains out of compliance, forming a sequence, or "series" of violations "related" by their being the same underlying violation.

In urging a broader interpretation of "any related series of violations" that would sweep in not just sequential daily violations but also separate violations, Enterprise focuses on the word "related" rather than "series." It argues that the nine permit violations were related because they were "all 'connected' or 'related' to the same interconnected system of pipes, and thus to one another." So it contends that "even supposing there were nine 'series of violations,' those nine 'series of violations' were all related, so the entire '*related* series of violations' is subject to a single $200,000 maximum penalty."

But even if we assume that Enterprise is correct that nine separate permit violations at different locations across Iowa—some for pipeline and others for underground storage facilities—can be considered related, this argument falters. It assumes that the word "series" is being used as a plural noun rather a singular one—both forms are spelled the same. Only if "series" were plural could the statute be capping multiple related series. If "series" is singular, then the statute caps a single "series of violations" that is "related." Indeed, Enterprise acknowledges as much when it concedes that the Commission's "reasoning might hold water if the statute allowed a separate $200,000 maximum penalty for '*each* series of violations'" rather than "for '*any related* series of violations.'"

To be sure, the statute would be clearer that series is singular if the statute used "each" rather than "any." But "any" can also be used with either a singular or plural noun. So its use does not win the fight for Enterprise—the statute can fairly

carry the precise meaning that Enterprise concedes could "hold water." It would be a different matter if the statute said that it capped the maximum penalty for *all* related series of violations—which would be clearly using series in its plural form. So too would Enterprise's argument have greater force if the statute did not use the word "series" at all—broadly capping all related violations. Yet the statute says neither of these things, leaving the grammatical analysis at a draw.

Still, the structure of the statute as a whole, the placement and logical relationship of the third sentence with the immediately preceding sentence, and the ordinary meaning of "any related series of violations" all point toward the Commission's interpretation of section 479B.21(1). We thus agree that the $200,000 maximum civil penalty set by the third sentence of section 479B.21(1) applies only to limit the penalty for a related series of ongoing daily violations and does not set a cap for otherwise distinct violations of chapter 479B—even if they are related.[9] And so, the Commission had the authority under section 479B.21(1) to impose the maximum $200,000 penalty for each of Enterprise's nine violations.

---

[9] While not binding on us, we note that our interpretation aligns with the Pipeline and Hazardous Materials Safety Administration's interpretation of similar statutory text for imposing civil penalties for violations of the federal pipeline safety laws. *See* 49 U.S.C. § 60122(a)(1) (authorizing in one sentence "a civil penalty of not more than $200,000 for each violation," clarifying in the second sentence that "[a] separate violation occurs for each day the violation continues," and specifying in the third that "[t]he maximum civil penalty under this paragraph for a related series of violations is $2,000,000"); *In re Enbridge Energy Partners, L.P.*, CPF No. 3-2008-5011, 2010 WL 6531629, at *14 (Dep't of Transp. Aug. 17, 2010) (reasoning that "'a related series of violations' means a series of daily violations in light of the sentence that comes before it"). It seems that no court has yet weighed in on this interpretation, but the federal agency has repeatedly reaffirmed it. *See In re ExxonMobil Pipeline Co.*, CPF No. 5-2013-5007, 2015 WL 780721, at *19 (Dep't of Transp. Jan. 23, 2015); *In re Colorado Interstate Gas Co & El Paso Corp.*, CPF No. 5-2008-1005, 2009 WL 5538649, at *9 (Dep't of Transp. Nov. 23, 2009).

### IV. Equal-Protection Challenge

Enterprise also argues that the Commission violated Enterprise's right to equal protection of the laws under the Iowa Constitution "by imposing a substantially larger penalty against Enterprise than for similarly situated pipeline and utilities companies which committed the same or similar statutory violations." *See* Iowa Code § 17A.19(10)(a) (authorizing court to grant relief from agency action that is "[u]nconstitutional on its face or as applied"); *New Midwest Rentals, LLC v. Iowa Dep't of Com., Alcoholic Beverages Div.*, 910 N.W.2d 643, 653 (Iowa Ct. App. 2018) (considering an equal-protection challenge to agency action).

Article I, section 6, of the Iowa Constitution provides, "All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens." Iowa Const. art. I, § 6. This provision is often referred to as our constitution's "equal protection clause." *AFSCME Iowa Council 61 v. State*, 928 N.W.2d 21, 31 (Iowa 2019). And it "is essentially a direction that all persons similarly situated should be treated alike." *Id.* (cleaned up). But "[i]f people are not similarly situated, their dissimilar treatment does not violate equal protection." *New Midwest Rentals*, 910 N.W.2d at 653 (cleaned up). And when any dissimilar treatment does not involve a suspect classification—such as race—it need only have a rational basis. *See Blumenthal Inv. Trs. v. City of West Des Moines*, 636 N.W.2d 255, 268 (Iowa 2001) (rejecting developer's equal-protection claim against city because "in every instance where another developer was treated differently, there was some distinguishing factor that provided a rational basis for the different treatment").

"The rational basis test is a very deferential standard." *AFSCME Iowa Council 61*, 928 N.W.2d at 32 (cleaned up). A challenger has the heavy burden to "negate every reasonable basis that may support the disparate treatment." *ACCO Unlimited Corp. v. City of Johnston*, 611 N.W.2d 506, 511 (Iowa 2000). This is particularly so when the challenged action is a part of a "collection of ad hoc adjudications in separate cases" under a statutory scheme "specifically designed to produce dissimilarity in result based on dissimilarity in the situation of the various" affected persons. *Glen Haven Homes, Inc. v. Mills Cnty. Bd. of Rev.*, 507 N.W.2d 179, 183 (Iowa 1993) (rejecting nursing home's claim "that its treatment for tax exemption purposes is so inconsistent with that granted other nursing homes similarly situated throughout the state as to be a denial of equal protection of the law").

To support its argument that its treatment was so different from the treatment of similarly situated companies as to be unconstitutional, Enterprise points to previous, lower civil penalties imposed by the Commission. Both parties agree that the closest analogue is the Commission's decision in *In re Sinclair Transp. Co.*, No. SPU-2023-0003 (Iowa Utils. Comm'n Apr. 21, 2023), *available at* https://perma.cc/W6UT-MNYR. Indeed, Enterprise calls *Sinclair* "the most striking example of the Commission's inequality of treatment." But *Sinclair* is hardly similar. Sinclair Transportation Company operated an 11.8-mile pipeline in Iowa without a permit for about 340 days, and the Commission imposed the maximum $200,000 penalty for that series of daily violations. Enterprise operated a 750-mile pipeline system in Iowa without any of its required permits for 7535 days. The length of Enterprise's pipeline system in Iowa is about 63 times longer than

Sinclair's. And its ongoing violations continued for 22 times as many days as Sinclair's. These differences in the gravity of Enterprise's violations—a required consideration in imposing a penalty under section 479B.21(2)—compared to the gravity of Sinclair's are a rational basis for the Commission's different treatment in imposing each company's civil penalties. And even so—the $1.8 million imposed on Enterprise is only nine times higher than Sinclair's $200,000 civil penalty.

What's more, the Commission imposed the maximum civil penalty it could on both Sinclair and Enterprise. To be sure, that statutory maximum was different for each because the Commission identified nine separate permits that Enterprise failed to obtain in violation of chapter 479B compared to just one failure by Sinclair.[10] *See* Iowa Code § 479B.21(1). But the Commission was following similar practices in its consideration of the appropriate penalty amount—with the different result driven by the differences in the situation. This does not prove an equal-protection violation. *See ACCO Unlimited Corp.*, 611 N.W.2d at 511; *Blumenthal Inv. Trs.*, 636 N.W.2d at 268.

Enterprise's three other comparators fare no better in buttressing its claim. *See In re Ames Mun. Elec. Sys.*, Nos. E-22515, E-22516 (Iowa Utils. Comm'n Apr. 26, 2023), *available at* https://perma.cc/2EHN-VG5Z; *In re City of Kimballton*,

---

[10] Enterprise also argues—essentially repackaging its unpreserved statutory claim about the number of required permits—that the Commission's decision that Enterprise committed nine separate ongoing violations, which increased its maximum penalty in comparison to Sinclair "lacks any rational basis." But unlike the rest of its equal-protection claim, Enterprise did not present this issue to—or obtain a ruling from—the Commission or the district court. So it is not preserved, and we cannot consider it on appeal. *See Williams*, 3 N.W.3d at 236; *Soo Line R.R. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 688 (Iowa 1994) ("Constitutional issues must be raised at the agency level to be preserved for judicial review.").

Nos. E-22511, E-22512, (Iowa Utils. Comm'n Apr. 21, 2023), *available at* https://perma.cc/Z9GJ-UK3W; *In re Algona Mun. Utils.* No. E-22527 (Iowa Utils. Comm'n Apr. 13, 2023), *available at* https://perma.cc/7KRV-T73B.[11]  They involve violations of a different statute—requiring a franchise to operate electric transmission lines.  *See* Iowa Code § 478.1(1).  Each of the utilities had obtained a franchise—their violations were just failing to petition to extend those franchises.  The duration of each violation—ranging from five to eight years—was much less than the two decades here.  So too was the scope of the transmission lines— ranging from roughly three to twelve miles in length—less than the 750-mile statewide pipeline system here.  And the civil penalties were imposed on a city or city utilities—the lowest penalty, on a town of less than 300 residents—rather than a large private business.  *See id.* § 478.29(2) (requiring consideration of "the appropriateness of the penalty to the size of the business of the person charged"); *cf. id.* § 479B.21(2).  Because of all these differences, Enterprise again fails to show that it received different treatment than similarly situated companies.

Bottom line, the Commission did not violate Enterprise's equal-protection right under article I, section 6, of the Iowa Constitution.

**AFFIRMED.**

---

[11] Because Enterprise cites to unpublished decisions of the Commission and did not attach copies of the decisions to its brief, we consider only those decisions for which Enterprise provided a hyperlink to the decision in the Commission's online electronic database.  *See* Iowa R. App. P. 6.904(2)(a)(2) (requiring a party to include "a citation to a readily accessible electronic database, such as Westlaw or LexisNexis, if available" or to "file and serve as an attachment a copy" of the unpublished agency decision "with the brief or other paper in which it is cited").  We note that Enterprise cited these decisions to the Commission and the district court and express no opinion whether a party could try to support an equal-protection claim on appeal by citing agency decisions that were not already in the record.